HUNTINGTON ET AL. *v.* HAMILTON, *etc.*, ET AL; *v.* HANNA, JUDGE.

[No. 17,566. Filed October 28, 1946. Rehearing Denied September 30, 1947. Transfer Denied February 3, 1948.]

*Dailey, Dailey and Dailey* and *Clinton H. Givan,* all of Indianapolis, attorneys for appellants.

*Kivett, Chambers, Vernon,* and *Kivett* all of Indianapolis, and *Stevenson and Kendall,* both of Danville, attorneys for appellees.

## OPINION ON PETITION FOR MANDATE

PER CURIAM.—On the 29th day of June, 1946, while this cause was pending in the Hendricks Circuit Court on the appellants' (plaintiffs below) motion for a new trial, said appellants filed, in open court, with the Honorable Horace L. Hanna, judge of said court, their joint and several notice of intention to take certain reserved questions of law on appeal to the Appel-

late Court of Indiana in the event the court overruled their said motion for a new trial. This notice set out in detail five specific questions of law which arose on the rulings of the court made during the trial and which the appellants proposed to bring into the record by a special bill of exceptions.

Later in the same day the court overruled the appellants' motion for a new trial and entered judgment for the appellee on the jury's verdict herein. On the 22nd day of August, 1946, some 30 days prior to the time limit for filing a transcript in this court, the appellants presented said special bill of exceptions containing said reserved questions of law to the Honorable Horace L. Hanna, judge of said Hendricks Circuit Court, who refused to sign the same as tendered.

Upon petition of the appellants we issued an alternative writ of mandamus commanding said judge to sign or correct and sign said bill of exceptions so tendered or show cause why the same should not be done.

We now have before us the return of the Honorable Horace L. Hanna, as judge of the Hendricks Circuit Court, to said alternative writ and the question is, should a mandatory writ issue ordering said respondent to sign said bill of exceptions as tendered or is his return sufficient to show cause for his refusal to do so?

The appellants herein are seeking to perfect an appeal under the provisions of § 2-3114, Burns' 1946 Replacement, which reads as follows: "Either party may reserve any question of law decided by the court, during the progress of the cause, for the decision of the Supreme Court. Any question of law so reserved may be taken to the Supreme Court upon the bill of exceptions showing the decision, or, if it arises on demurrer, upon the pleadings involved. When the question so reserved is shown by the bill of exceptions, the

party excepting shall notify the court that he intends to take the question of law to the Supreme Court upon the bill of exceptions only; and the court shall thereupon cause the bill of exceptions to be so made that it will distinctly and briefly embrace so much of the record of the cause only and the statement of the court as will enable the Supreme Court to apprehend the particular question involved."

The difficulty arises from the following factual situation: The appellants prepared the bill of exceptions in question and concluded that no part of the evidence taken in the cause is necessary to enable this court to determine the questions of law reserved and therefore included no part of such evidence in said bill of exceptions.

The respondent on the other hand insists that the responsibility is his to see that said bill of exceptions shall embrace all of the record necessary to enable this "court to apprehend the particular question involved" and, in his judgment, a complete transcript of all the evidence is vital to a determination thereof. That he has ordered the preparation of such a transcript and when completed he will incorporate it in said bill of exceptions and properly certify the same.

We are not disposed to decide the question of the sufficiency of the tendered bill in that respect in these proceedings which are collateral to this appeal and brought merely in aid of our appellate jurisdiction. If the appellants are satisfied to rest their appeal on the bill of exceptions as tendered and the same speaks the truth as far as it goes we see no logical reason why the respondent should withhold a certificate qualified to that extent. It is said in § 2108 of Watson's Revision of Work's Practice that: "The object of the statute is to enable an appeal to be taken

on a partial record in all cases where the question or questions involved can be presented without the expense of taking up the entire record including all the evidence. Its purpose has been to simplify procedure, prevent the encumbering of the record with unnecessary matter, and save to litigants the expense of bringing such unnecessary matter into the record on appeal."

If we conclude, after due hearing, that the partial record that eventually reaches us is insufficient to present the questions reserved, the judgment below will be affirmed. If we conclude otherwise, the questions presented will be decided on their merits.

It is therefore adjudged that the respondent, the Honorable Horace L. Hanna, as judge of the Hendricks Circuit Court, is hereby ordered to sign, or correct and sign the bill of exceptions presented to him on the 22nd day of August, 1946, and limit his certificate of verity to those matters and proceedings which said bill purports to contain.

A certified copy of this opinion, duly served upon the respondent, shall be considered the mandate of the court without special writ.

NOTE.—Reported in 69 N. E. 2d 134.

## OPINION ON MERITS

CRUMPACKER, P. J.—The appellants, as heirs at law of the late Maude H. Darrach, deceased, brought this action in the Probate Court of Marion County upon a complaint in one paragraph through which they seek to have the last will and testament of said decedent declared invalid on the grounds (1) that the same was unduly executed, and (2) that at the time the decedent made said will she was a person of unsound mind. The case was venued to the Hendricks Circuit Court where

it was tried to a jury and from an adverse judgment it is brought here on certain reserved questions of law pursuant to § 2-3114, Burns' 1946 Replacement. The bill of exceptions, by means of which the appellants present said questions, contains none of the evidence taken at the trial and, on this state of the record, it is conceded by all parties that only such questions as cannot, by any possibility, be dependent on or affected by the omitted evidence, are before us for decision. The first two questions presented emerge from the following factual background: After the appellants had rested their case and before the appellees went forward with the evidence, the appellees moved for a directed verdict which the court overruled. They thereupon filed a written motion to withdraw from the consideration of the jury the issue of the undue execution of the will. This motion was sustained by the court with the following oral comment:

"Members of the Jury, the court gives you the following information: Come now the parties, and the court having had under advisement its ruling on defendants' motion to withdraw from the further consideration of the jury the issue tendered by the allegation of plaintiffs' complaint that the will in question was unduly executed, for the reason that the evidence is not sufficient to support a verdict that the will in question was unduly executed;

"And the court being duly advised in the premises, now sustains said motion and withdraws from the further consideration of the jury the issue tendered by the allegation of the plaintiffs' complaint that the will in question was unduly executed. And to which ruling of the court, the plaintiffs separately and severally object and except.

"It will, therefore, be unnecessary for you to give any further consideration to that issue. The case will proceed upon the issue in this case as to whether or not Maude H. Darrach was a person of

sound or unsound mind, at the time of the signing of the will in question."

The appellants contend that this procedure was erroneous because (1) even though there was no evidence to support the undue execution issue, the court was powerless to withdraw it from the jury at that stage of the trial, and (2) the court's comment in sustaining the motion constitutes an oral instruction to the jury and, having been given after the appellants had requested written instructions, violates the mandatory direction of § 2-2008, Burns' 1946 Replacement.

In support of the first point above set out the appellants contend that there is but one issue in a will contest, *i.e.*, is the will involved the true will of a person who had sufficient mental capacity to make it? This issue is one and indivisible, they say, and in an action to contest a will, even though the contestants allege several grounds of attack, the cause of action is still one and the court cannot split it into its constituent elements and withdraw one of such elements from the jury because of a failure of evidence to support it.

There can be no question that a complaint to invalidate a will, alleging several separate and distinct grounds of contest, pleads but a single cause of action and this is true whether each of said grounds is made the subject of a separate paragraph of complaint or whether they are all grouped in one. *McDonald* v. *McDonald* (1895), 142 Ind. 55, 41 N. E. 336. It has also been held in Indiana that "The sole issue presented to the jury for trial and determination was whether the will had been duly executed by a testator who possessed at the time testamentary capacity." *Bradley* v. *Onstott* (1914), 180 Ind. 687, 692, 103 N. E. 798. Although there is but one ulti-

mate issue in a will case, *i.e.*, the validity of the disputed will, this does not mean that the jury must be left to speculate on those statutory grounds of contest which are unsupported by evidence. In *Jarrett* v. *Ellis* (1923), 193 Ind. 687, 692, 141 N. E. 627, the Supreme Court said:

"There being no evidence that fraud, threats, duress or undue influence of any kind entered into the making of the will, it was error to refuse to give an instruction withdrawing the issue of undue influence from the jury. And there being no evidence that the will was unduly executed in any other particular, it was also error to refuse an instruction withdrawing the issue of undue execution."

Thus our courts recognize that the ultimate issue— the validity of the will—may rest upon component issues which may be segregated and those which are unsupported by evidence must be withdrawn from the consideration of the jury upon request. The appellants recognize this principle of law but insisted that it was available to the appellees only at the conclusion of all the evidence in the case. They justify this position by an argument to the effect that the burden that rested upon them of proving their case by a fair preponderance of the evidence means a preponderance of all the evidence in the case and not just that given by their own witnesses. When the court withdrew the issue of undue execution at the conclusion of their evidence, they say they were deprived of the opportunity of proving such issue by evidence that might be elicited from the appellees' witnesses and not until they had tried and failed could the court properly withdraw the same. This argument is ingenious but not persuasive. There being no evidence of undue execution when the appellants rested their case, it cannot be presumed that the

appellees, in presenting their defense, would have opened the subject and it is reasonable to assume that they would have confined the appellants' cross-examination to its legitimate scope. Thus at the close of all the evidence there would still be no proof of the issue and it would then be the duty of the court to withdraw it from the jury's consideration. So it appears that the whole question is one of procedure and any irregularity in that respect was harmless. It cannot be conceded, however, that the court had no power or jurisdiction to withdraw the issue at the close of the appellants' evidence. It was its administrative duty to expedite the trial and so control its procedure that the jury might not be confused or lead into the consideration of false or sham issues or matters that could not be the basis of a legitimate verdict. In the interest of time, clarity and orderly procedure it is the administrative duty of a trial court to simplify the questions of fact to be submitted to a jury by the withdrawal of any issue which the party has had a fair opportunity to establish but offers no evidence to support. The appellants had their day in court on the question of undue execution and when they rested their case in chief without any evidence to support the issue they cannot be heard to complain that the court promptly withdrew it from further consideration. The case of *McDonald* v. *McDonald, supra,* in which the appellants place great confidence, does not sustain their contention as to the one and indivisible nature of the issue in a will contest. There a will was assailed by a complaint alleging both forgery and undue influence in its execution. These two grounds of attack are necessarily inconsistent and the defendants sought to compel the plaintiffs to elect upon which theory they chose to proceed. The court held that compulsory election would not lie and the appellants here

seem to feel that because they could not have been compelled to elect upon which ground of contest they chose to go forward, all grounds alleged must remain in the case until the close of all the evidence. The McDonald case does not so hold nor have we been referred to any case that does.

We now reach the appellants' second point on this phase of the case. The procedure the court adopted in withdrawing the undue execution issue, they contend, constituted the giving of an oral instruction to the jury after a proper request for written instructions had been made. Unquestionably it is the law in this state that a court which instructs a jury orally, in whole or in part, after written instructions have been requested properly, commits reversible error and prejudice is conclusively presumed. *Bosworth* v. *Barker* (1879), 65 Ind. 595, 597; *Cutler* v. *Davidson* (1925), 82 Ind. App. 495, 496, 146 N. E. 584; *Shafer* v. *Stinson* (1881), 76 Ind. 374, 376; *Harden* v. *Helton, Guardian* (1875), 50 Ind. 319, 324. This rule has its origin in a statute which gives a party an imperative right to written instructions upon timely request. § 2-2008, Burns' 1946 Replacement. The statute makes it the mandatory duty of the court to instruct in writing "if required by either party," and the Supreme Court has held that neither it nor any other court has the power to relax this mandate. *Bosworth* v. *Barker, supra,* p. 597. Therefore if the oral remarks of the court in the instant case, in withdrawing the undue execution issue, reach the dignity of an instruction to the jury and fall within the purview of § 2-2008, *supra,* we will be constrained to hold that the court's action was reversible error even though the instruction itself might have been justified if written.

Instructions referred to by this statute have been defined as follows:

> "Literally, the word 'instruction' may apply to any direction given to a jury by the court, but as used in the statute making it incumbent on the court to reduce its instructions to writing, it relates to the law of the case, and may properly be said to mean an exposition of the principles of law applicable to the case, . . . which the jury are bound to apply in order to render a verdict establishing the rights of the parties in accordance with the facts proven." *Lehman* v. *Hawks* (1890), 121 Ind. 541, 543, 23 N. E. 670.

In *Bradway* v. *Waddell* (1884), 95 Ind. 170, 175, the court said: ". . . statements of rules of law governing the matters in issue or the amount of recovery are instructions, . . ." We are of the opinion that the oral remarks of the court, here considered, do not fall within the scope of the above definitions. The court merely informed the jury that a motion had been made to withdraw the issue of undue execution from its consideration; that such motion had been sustained and the cause would go forward on the question of the testatrix' mental capacity to make a valid will, and as the case proceeded the jury was to consider no other question. This statement is clearly analogous to that class of admonitions a trial court is constantly required to give to a jury, during the trial of a law suit, limiting the applicability of certain evidence to one issue or another.

But even though we assume that the statement is an instruction in a technical sense, it does not fall within the purview of the statute. We find that § 2-2008, *supra,* is the verbatim reenactment, in 1881, of § 234, 2 R. S. 1876, which was construed by the Supreme Court in *Stanley* v. *Sutherland, Administrators* (1876), 54 Ind. 339, 354, as follows:

"The statute applies to instructions to be given to the jury after the argument is concluded. But during the progress of a trial, it may be proper and necessary for the court to make statements and explanations to the jury, in order that they may properly understand, as the case progresses, the purpose for and conditions upon which the evidence is admitted. As an illustration, suppose a piece of evidence is given, which of itself has no force unless some other fact is proved; the court might very properly say to the jury, at the time, that the evidence given was not to be regarded unless the other fact should be proved. The case before us is another illustration. We do not think such explanations or statements, thus made during the progress of a trial, need to be reduced to writing. They are not 'instructions' within the meaning of the statute."

When the legislature reenacts a statute after the same has been construed by the Supreme Court it must be read as though such construction were actually written into it. *Gentry* v. *State* (1945), 223 Ind. 459, 462, 61 N. E. 2d 641, 642; *Department of Treasury* v. *City of Linton* (1945), 223 Ind. 363, 367, 60 N. E. 2d 948, 950.

The appellants next challenge the propriety of appellees' tendered instruction No. 4, given by the court, and contend that under no conceivable state of the evidence can it be justified. The instruction follows:

"The test of the mental capacity of Maude H. Darrach to make the will in question is whether or not, putting aside all peculiarities, eccentricities, and all unnatural, unreasonable or irrational conduct, if any be shown by the evidence, did there remain in Maude H. Darrach intelligence sufficiently strong and rational to enable her to know the extent and value of her property, the number and names of those who were the natural objects of her bounty, their necessities and deserts with reference to their conduct and treatment towards her, and

memory sufficient to carry these things in mind long enough to have her will prepared and executed. Unless you find from a preponderance of the evidence that Maude H. Darrach at the time she made this will in question did not have this mental capacity, then she was in the eyes of the law a person of sound mind."

The appellant insists that in giving this instruction the court told the jury that, in arriving at a verdict, it should disregard all evidence of unreasonable or irrational conduct on the part of the testatrix and give no consideration to her peculiarities and eccentricities, if any had been shown. This, they complain, destroyed their case on the mental capacity issue and made a verdict sustaining the will inevitable.

This objection, however, is raised for the first time in the appellants' reply brief and, as far as the record discloses, was at no time urged upon the trial court. The objection below was as follows:

"The plaintiffs separately and severally object to the giving of instruction No. 4 tendered by the defendants and given to the jury by the court for the following reasons, to-wit: (a) The question of the decedent's intelligence is not a proper term to use in such instructions, the only question being as to whether she had mind and memory enough to keep the names and deserts of the objects of her bounty and the size and extent of her estate in mind long enough to have a will prepared and execute the same."

With as liberal a frame of mind as is consistent with orderly procedure we are unable to construe this objection to include the proposition that the instruction withdrew vital and competent evidence from the jury's consideration or as pointing out to the trial court any such question.

Rule 1-7, 1946 Revision provides:

> "The court shall indicate on all instructions, in advance of the argument, those that are to be given and those refused. After the court has indicated the instruction to be given, each party shall have a reasonable opportunity to examine such instructions and to state his *specific* objections to each, out of the presence of the jury and before argument, or specific written objections to each instruction may be submitted to the court before argument. *No error* with respect to the giving of instructions *shall be available* as a cause for new trial or *on appeal* except upon the *specific* objections made as above required." (Emphasis supplied.)

In construing this rule the Supreme Court said that, since September 2, 1940, "a general exception to an instruction would no longer raise a question and it is now necessary to show a specific objection to each instruction which is questioned in the motion for a new trial or on appeal. Furthermore, the question must be based upon that specific objection and any and all defects not so pointed out to the trial court are waived." *Allman* v. *Malsbury* (1946), 224 Ind. 177, 65 N. E. 2d 106, 110. In dismissing this question pursuant to the rule and its construction by the Supreme Court, we do not wish to be understood as approving the instruction involved. To the lay mind it is extremely misleading and had an objection been made to it in the trial court specifically pointing out the defect here relied upon, a very serious question would be presented.

The appellants object to another alleged infirmity in the instruction under consideration in that it makes intelligence instead of mind and memory the test of mental capacity to make a valid will. It is difficult for us to disassociate the word "intelligence" from intellectual capacity, understanding and power to comprehend. For all practical purposes "intel-

ligence sufficiently strong" means "mind sufficiently strong" and the memory element of the equation if amply supplied by the words "memory sufficient to carry these things in mind long enough to have the will prepared and executed," which are used later in the instruction. In appellants' tendered instruction No. 8, given by the court, and in instruction No. 10, given on the court's own motion, the formula for determining the mental capacity of the testatrix is fully and accurately set out and when the charge as a whole is considered we do not believe the jury could possibly have been confused or mislead.

The appellants attack instruction No. 6, requested by the appellees and given by the court, which relates to certain things which the jury was told it had the right to consider in determining who were the natural objects of the testatrix' bounty. The appellants object to this instruction on the grounds that "it is outside the issues, misleading to the jury, contains an incomplete and inaccurate definition of 'bounty' and 'natural' and is an inaccurate and misleading quotation." We do not agree that the question as to who were the natural objects of the testatrix' bounty was outside the issues. That was one of the things it was essential for her to have mental capacity sufficient to know and remember when she made her will. But even so the appellants tendered and the court gave an instruction on the same subject and they cannot now be heard to complain that the matter was outside the issues. The court also gave its instruction No. 20 dealing with the same subject and when all three of these instructions are read together it is apparent that the jury had before it a full, complete and accurate guide for determining the facts as to who were the natural objects of the testatrix' bounty.

In instruction No. 9, tendered by the appellees, the court cast the burden upon the appellants of proving that they were the natural objects of the testatrix' bounty. In the absence of the evidence we are required to indulge a presumption in favor of the pertinency of the instruction and therefore we assume that the appellants asserted that they were natural objects of the testatrix' bounty but that she did not know it when she made her will and therefore she was of unsound mind. That being a ground of contest the burden rested on the appellants to prove it and the instruction was proper.

In instruction No. 17, tendered by the appellees, the court told the jury that the appellants, as children of the testatrix' half-brothers, are her heirs at law but that fact alone placed no duty upon her to provide for them by will and the fact that she did not do so, standing alone, was not evidence of unsoundness of mind. The appellants' sole objection to this instruction is that the jury was not concerned with the laws of descent and an instruction on that subject was wholly outside the issue. Notwithstanding this contention the appellants tendered and the court gave instruction No. 43 in which the jury was informed as to whom the property of the testatrix would have gone, by the laws of descent, had she died intestate and that "there is no distinction between kindred of the half blood and those by the whole blood." We consider both instructions 17 and 43 proper but if, on any conceivable theory, it was error to have given them it was error which the appellants as well as the appellees invited.

Appellees' tendered instructions Nos. 19, 20, and 21 were each given to the jury over the appellants' objection that each invades the province of the jury. These instructions concern themselves with the legal effect of

certain provisions of the will of the testatrix' husband, the late Eugene H. Darrach, deceased, and with the conduct of the testatrix in reference thereto. The appellants contend that whether or not the testatrix' attitude toward her husband's will was irrational, unnatural and unreasonable was a question of fact which the court, in effect, decided for the jury through the medium of the above instructions. It is apparent that the propriety of these instructions depends wholly on the evidence in the case. If the appellants sought to prove that the testatrix was of unsound mind because she attempted to avoid the will of her husband, the legal effect of said will and the rights and duties of the testatrix in reference thereto became highly pertinent. In the absence of the evidence, or so much thereof as bears on this question together with a statement by the trial judge that such is all the evidence on the subject, no question on this group of instructions is presented for our consideration. *Thomas* v. *City of Huntington* (1923), 80 Ind. App. 476, 141 N. E. 358.

Judgment affirmed.

Bowen, C. J., and Royse, J., not participating.

NOTE.—Reported in 73 N. E. 2d 762.