ALLAN DICKSON, A MINOR, BY CLARENCE DICKSON,
HIS GENERAL GUARDIAN, AND ANOTHER v.
ALBERT BOBER.

130 N. W. (2d) 526.

September 25, 1964—Nos. 39,018, 39,019.

*O'Leary, Trenti & Berger,* for appellant.
*Clarence H. Kleffman,* for respondents.

SHERAN, JUSTICE.

Appeal from an order granting a new trial, in the trial court's view "exclusively on the ground of error of law occurring on the trial."

On July 25, 1960, at approximately 2:30 p. m., a collision occurred between a motorcycle owned and operated by Allan Dickson, a minor, and an automobile owned and operated by Albert Bober. Both vehicles were damaged. Allan Dickson sustained personal injuries giving rise to extensive hospital and medical expense. Bober was hurt but not seriously. Actions were instituted by Clarence Dickson on behalf of his minor son for damages and on his own behalf for his loss as father of Allan. Defendant denied negligence in each of the cases and asserted contributory negligence and assumption of risk. He also counterclaimed for his property damage and personal injury. Alternative forms of verdict were submitted to the jury which, by finding in favor of the de-

fendant at the close of a consolidated trial and rejecting his counterclaim, determined, in effect, that the accident was proximately caused by the negligence of both drivers. Upon motion of plaintiffs the trial court ordered a new trial, assigning as its reason a ruling which had prevented Allan's appearance before the jury. Defendant argues that this ruling did not constitute prejudicial error justifying a new trial. Plaintiffs, in support of the order granting a new trial, contend that Allan was entitled as a matter of law to be in the courtroom. They also urge that other errors not acknowledged by the court make retrial necessary. These include: (a) Failure to charge the jury that Allan, being unable to testify as a result of the accident, was entitled to the benefit of a presumption of due care; (b) an instruction that there was no evidence that defendant was driving in excess of 60 miles per hour as he approached the place of the accident; (c) incomplete instructions permitting the jury to find that Baich Road was a through highway; (d) failure to instruct the jury relative to the emergency doctrine as applied to Allan in the operation of his motorcycle; and (e1) failure to caution the jury not to be misled by marks inserted on two of the exhibits, (e2) overemphasis of instructions which related to the elimination of sympathy and prejudice, (e3) allowance of parol evidence on the issue of establishment of a through highway, and (e4) comment concerning the superior probative value of actual measurements made at an accident scene to estimates of distances based on more general observations.

■ The accident changed Allan Dickson from a vital, intelligent, healthy youth to one unable to express or sustain himself, helpless and entirely dependent on others, and wholly unable to comprehend trial proceedings. Before deciding against his appearance in court, the trial judge observed him and noted:

"* * * His eyes seemed to function on detection of an unusual movement. Hideous and agonizing groans and sounds emanated from plaintiff. In this trial test, arranged so that the court would have some conception of what was involved, the above is a fair description of the depressing spectacle that in all likelihood could have been enacted if plaintiff's request [to present Allan to the jury] had been granted."

Plaintiffs cite numerous decisions to support their claim that Allan had an absolute constitutional right to be in court during his trial.[1] None is authority for the proposition that the plaintiff in a personal injury action who can neither contribute evidence on the question of fault nor comprehend the proceedings is entitled as a matter of constitutional right to be present in court when the liability issue is litigated even though fully and adequately represented by counsel.

The rights of this plaintiff were protected by the general guardian who brought the action for him and by the attorney selected to represent his interests during the trial.[2] While we find no Minnesota decision directly in point, it appears to us that the determination of whether a plaintiff unable by reason of his injuries to contribute to or understand the trial proceedings should be permitted, nevertheless, to attend the trial must rest in the sound discretion of the trial court. The jury in this case determined that the accident was caused by negligence on the part of both drivers. It did not reach the question of

---

[1]See, Chicago Great Western Ry. Co. v. Beecher (8 Cir.) 150 F. (2d) 394, certiorari denied, 326 U. S. 781, 66 S. Ct. 339, 90 L. ed. 473; Arrington v. Robertson (3 Cir.) 114 F. (2d) 821; Florida Greyhound Lines, Inc. v. Jones (Fla.) 60 So. (2d) 396; Georgia R. Co. v. Tice, 124 Ga. 459, 52 S. E. 916; Kopplin v. Kopplin, 330 Ill. App. 211, 71 N. E. (2d) 180; Freimann v. Gallmeier, 116 Ind. App. 170, 63 N. E. (2d) 150; In re Rogers' Estate, 226 Iowa 183, 283 N. W. 906; Heck v. Anderson, 234 Iowa 379, 12 N. W. (2d) 849; Standard Coffee Co. v. Carr, 171 Miss. 714, 157 So. 685; Bryant v. Kansas City Rys. Co. 286 Mo. 342, 228 S. W. 472; Leonard's of Plainfield, Inc. v. Dybas, 130 N. J. L. 135, 31 A. (2d) 496; Seitz v. Seitz, 1 N. J. Super. 234, 64 A. (2d) 87; In re Gibbons, 245 N. C. 24, 95 S. E. (2d) 85; East Ohio Gas Co. v. Van Orman, 41 Ohio App. 56, 179 N. E. 147; Anderson v. Putnam County Beer Bd. 184 Tenn. 623, 201 S. W. (2d) 994; Southern I. & U. Co. v. Richardson, 128 Tex. 82, 95 S. W. (2d) 956; Martin v. Burcham (Tex. Civ. App.) 203 S. W. (2d) 807; Sanders v. Lowrimore (Tex. Civ. App.) 73 S. W. (2d) 148; Miller v. Johnson, Inc. 191 Va. 768, 62 S. E. (2d) 870; Gatterdam v. Dept. of Labor & Industries, 185 Wash. 628, 56 P. (2d) 693.

[2]"* * * The due process clause requires that a defendant be accorded the right to be present in person *or by counsel,* at every stage of his trial, and orderly procedure requires that a plaintiff be accorded the same right." (Italics supplied.) 16A C. J. S., Constitutional Law, § 624.

damages. Therefore, plaintiffs could not have been prejudiced by the absence of Allan from the courtroom during the trial.[3] Since the order of the trial court granting a new trial was based exclusively upon a ruling, conceived by it to be an error of law, which in our judgment was both proper and necessary, the order granting a new trial is reversed.

■ We are directed by statute in a situation such as this to consider whether a new trial is warranted because of errors of law occurring at the trial but not assigned by the trial judge as a basis for his decision.[4]

Evaluation of plaintiffs' claims requires these facts: Cooper Road (east-west) and Baich Road (north-south) intersect in Balkan township, St. Louis County, Minnesota. At and near the center of the intersection the traveled surfaces are graveled, almost level, and about 30 feet wide. Trees, weeds, and brush serve to obstruct vision in all directions so that the intersection can be described as a "blind" corner. There were no disinterested witnesses to describe the collision or the approach of the vehicles to the point of impact. And, as stated, Allan Dickson sustained an injury at the time of the accident which prevented him from testifying.

Albert Bober testified: On the day of the accident the 26-year-old defendant was employed by the Oliver Mining Company at Chisholm. He left work shortly before 2:30 p. m., driving a 1956 blue and white automobile in good mechanical condition. The weather was bright

---

[3]Separation of issues for purposes of trial would be an effective way of permitting a plaintiff whose appearance is relevant to the issue of damages to be present when and if that question is decided and to be absent when evidence relevant to legal responsibility is being presented to the jury. See, Rules of Civil Procedure, Rule 42.02.

[4]Minn. St. 605.09 (L. 1963, c. 806, § 8), specifying appealable orders, includes the following: "(d) * * * from an order granting a new trial if the court expressly states therein, or in a memorandum attached thereto, that the order is based exclusively upon errors of law occurring at the trial, and upon no other ground; * * * but upon appeal, such order granting a new trial may be sustained for errors of law prejudicial to respondent other than those specified by the trial court."

and clear. Driving north on Baich Road, his speed, as he approached Cooper Road, was about 50 miles per hour. The road was dry and there was no other traffic. He could not state his speed as he came within a car length or two of the intersection but, he testified, "I had slowed down because my foot was off the gas." Pressed to estimate his speed, he said, "I would say 40, maybe a little more." At that time he saw the motorcycle entering from his left. It appeared to be about the same distance from the intersection and traveling at the same rate that he was. It did not change its speed from that time until the two vehicles collided "either in the middle or a little north of the middle of the intersection." He reported:

"Well, as I come toward the road, I let up on the gas and looked to the left and back to the right, and then I looked back to the left again and that's when I seen the motorcycle; I would say we could have been no more than 40 feet apart, and I put the brakes on and turned to the right and it was too late and we hit right about in the middle of it, a little more on the intersection, and I went in the ditch on the north side."

The witness was unable to state whether he had actually applied the brakes before the collision. Following the impact, his car continued on for a distance of about 110 feet, coming to rest partly on the surface and partly in the east ditch of Baich Road.

Bober's account is consistent with other evidence appearing in the record. There were no skid marks indicating application of brakes by the motorcycle operator. One witness called by plaintiffs was allowed to express the opinion that the Bober car was traveling about 40 miles per hour at impact. Another thought it to have been about 46 miles per hour. Pictures of the vehicles which were introduced in evidence support the conclusion that the motorcycle ran into the left side of the automobile. The cycle moved about 100 feet northerly after impact and the body of Allan was thrown nearly that far in the same direction.

Whether there was a stop sign in place at the southwest corner of the intersection at the time of the accident was a disputed question of fact significant because the operator of the motorcycle proceed-

ing easterly on Cooper Road would have been required to stop at a properly placed sign. Clarence Dickson testified that as a town board member he participated in the meeting of that body directing the placement of a stop sign at the point in question. It is undisputed that such a sign was placed there. The testimony conflicts as to whether it was in place on the day of the accident. There is evidence to support a finding that it and other signs had been knocked down on or about Halloween of 1959 and that, although some of the signs so removed had been replaced, the one at the southwest corner of this intersection had not been. Both plaintiffs had treated Baich Road as a through highway. Minn. St. 169.01, subd. 35.

Plaintiffs contend that the trial court should have charged the jury that Allan Dickson was presumed to have been in the exercise of due care prior to and at the time of the accident. They analogize the position of Allan, who could not testify because of his injuries, to that of a deceased person and contend that there is as much reason for the application of a presumption of due care here as in an action for wrongful death, to which Minn. St. 602.04 applies and provides:

"In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action."

Although there is authority from other jurisdictions giving support to the proposition that a plaintiff deprived of his ability to testify by injuries received in an accident should be afforded the benefit of the presumption of due care,[5] no such principle has ever been accepted in this state. In our judgment, the trial court did not err in failing to instruct the jury that such a presumption was to be applied under the facts of this case.

We agree with the trial court's statement that there was no

---

[5]See cases collected in Annotation, 141 A. L. R. 872.

evidence to support a finding that defendant was driving in excess of 60 miles per hour as he approached the intersection. Defendant's own estimate of his speed was 50 miles per hour. The testimony of plaintiffs' witnesses served to corroborate his statement. There was no significant physical evidence upon which a finding of a speed in excess of 60 miles per hour could be reasonably based.

 Plaintiffs were not prejudiced by the failure of the trial court to read to the jury § 169.04, which provides that no regulation enacted by local authority designating a through highway shall be effective "until signs giving notice of such local traffic regulations are posted upon and kept posted upon or at the entrance to the highway or part thereof affected as may be most appropriate."

The trial court did read to the jury § 169.30, which provides in part:

"The commissioner, with reference to state trunk highways, and local authorities, with reference to other highways under their jurisdiction, may designate through highways by erecting stop signs or yield signs at entrances thereto or may designate any intersection as a stop or yield intersection by erecting like signs at one or more entrances to such intersection * * *."

Allan Dickson was obligated to yield the right-of-way to the automobile approaching the intersection from his right under the circumstances of this case, whether Baich Road was a through highway or not.[6] The admission of Clarence Dickson that the stop sign had been authorized by the town board, added to the fact that such a sign was actually placed there, established prima facie that the sign was authorized and maintained. If it had been removed temporarily because of the conduct of pranksters or hoodlums, that fact should not affect the obligation of one who knew that the absence of the sign was accidental. And, finally, if the approach of the motorcycle to the place of collision was as indicated by the testimony, the question of whether Allan had stopped before proceeding to the point of impact was not of real significance.

 There was no reversible error because the emergency doc-

---

[6] See, Minn. St. 169.20, subd. 1. Compare § 169.20, subd. 3.

trine as given in the charge of the trial court was not related to Allan's conduct. If an emergency existed from his point of view, it was because he failed to yield the right-of-way to the approaching automobile. An emergency sufficient to excuse what would otherwise be negligent conduct must be experienced by a party "through no fault of his own." That situation did not exist here.[7]

The remaining claims of error asserted by plaintiffs are not seriously pressed and will not be considered in detail. Suffice it to say that in our judgment marks made on the various exhibits were not such as to be misleading to the jury. The fact that one of the pictures showed a stop sign at the southwest corner of the intersection which was placed there after the accident did not, we believe, influence the outcome of this case. The instructions of the trial court did not overemphasize the duty of the jurors to eliminate sympathy or prejudice in their consideration of the case. Failure to produce a formal resolution by the town board establishing the intersection as a through highway was not necessary when plaintiff Clarence Dickson acknowledged that the action had in fact been taken.[8] It is entirely proper for the trial court to call to the jurors' attention that testimony reporting measurements actually made at the scene of the accident has more probative effect than the estimates of witnesses making less scientific observations.

It is our conclusion that the order of the trial court granting a new trial should be reversed. His rulings with respect to the presence of Allan Dickson in the courtroom were justified and probably necessary to preserve an atmosphere of fairness while the evidence with respect to liability was being presented and assessed. We can see no purpose in a retrial where, from the facts appearing in this record, the compelling inference is that the accident occurred because of the injured plaintiff's failure to keep a lookout or to yield the right-of-way at a dangerous intersection with which he was familiar.

Reversed and remanded with directions that judgment be entered for the defendant.

---

[7] See, Zickrick v. Strathern, 211 Minn. 329, 331, 1 N. W. (2d) 134, 136; Kachman v. Blosberg, 251 Minn. 224, 87 N. W. (2d) 687.

[8] See, Annotation, 74 A. L. R. (2d) 242.