203 So.2d 508 (1967)
Connie W. PURVIS, Appellant,
v.
INTER-COUNTY TELEPHONE & TELEGRAPH COMPANY, a Corporation Existing under the Laws of the State of Florida, Appellee.
No. 7003.
District Court of Appeal of Florida. Second District.
October 20, 1967.
Rehearing Denied November 20, 1967.
*509 Lefferts L. Mabie, Jr., Pensacola, and Larry Klein, of Miller, Cone, Owen, Wagner & Nugent, West Palm Beach, for appellant.
Charles Cook Howell, Jr., Jacksonville, for appellee.
PER CURIAM.
This rear-end collision case was originally before this court in an opinion reported at 163 So.2d 38. The facts giving rise to this law action are set forth in some detail in that opinion and to reiterate all of them herein would serve no useful purpose. A brief "statement of the case" is necessary, however, so that the present appeal may be placed in its proper perspective.
The appellant here, plaintiff below, prior to the first appeal to this court, moved for summary judgment on the issue of liability against the defendant, appellee here. The trial court granted plaintiff's motion and the case proceeded to trial on the issue of damages only. The defendant brought the original appeal to this court, challenging the trial court's order granting plaintiff's motion for summary judgment. This court reversed the lower court's order and remanded the case for a new trial on the issues of liability and damages. The plaintiff's petition for writ of certiorari was granted by the Supreme Court, which remanded the cause for a new trial on the liability issue only, and not on both liability and damages as this court had ordered. See Purvis v. Inter-County Telephone and Telegraph Company, Fla. 1965, 173 So.2d 679. In due course a new trial was had; the jury found for the defendant on the liability issue; and plaintiff has appealed the final judgment entered against him.
Point III of appellant's brief presents the following question:
"Did the court commit prejudicial error in excluding the plaintiff from the courtroom during his own trial on the grounds that his physical appearance and conduct may have resulted in prejudice to either party?"
After a careful analysis of the record presently lodged in this court, we conclude that the exclusion of the plaintiff from the courtroom in this instance was error and we reverse.
*510 The lower court's order denying plaintiff's motion for judgment notwithstanding verdict and/or motion for new trial provides in pertinent part that "* * * the court interviewed the plaintiff, Connie W. Purvis, out of the courtroom and found him to be argumentative, somewhat irrational and of such mental attitude and physical appearance that the jury might be influenced."
In Florida Greyhound Lines v. Jones, Fla. 1952, 60 So.2d 396, the Supreme Court of Florida was faced with the propriety of a proceeding where the trial court permitted the appearance of the plaintiff "* * * before the jury, when she was on a stretcher and, apparently, in a weak, sickened and stupified condition and attended by a nurse and a hospital attendant." There the Court said:
"* * * One who institutes an action is entitled to be present when it is tried. That, we think, is a right that should not be tempered by the physical condition of the litigant. It would be strange, indeed, to promulgate a rule that a plaintiff's right to appear at his own trial would depend on his personal attractiveness, or that he could be excluded from the court room if he happened to be unsightly from injuries which he was trying to prove the defendant negligently caused. The appellee was properly present. If the use of stretcher and attendants was affected there would be occasion for the court to regulate the appearance to prevent the opposite party from being victimized and the jury from being deceived by the subterfuge, but no such deceit is claimed to have been practiced in this trial."
Then, in Dickson v. Bober, 1964, 269 Minn. 334, 130 N.W.2d 526, a case relied on heavily by appellee, we find the highest Court of Minnesota making the following observations:
"The accident changed Allan Dickson from a vital, intelligent, healthy youth to one unable to express or sustain himself, helpless and entirely dependent on others, and wholly unable to comprehend trial proceedings. Before deciding against his appearance in court, the trial judge observed him and noted:
"`* * * His eyes seemed to function on detection of an unusual movement. Hideous and agonizing groans and sounds emanated from plaintiff. In this trial test, arranged so that the court would have some conception of what was involved, the above is a fair description of the depressing spectacle that in all likelihood could have been enacted if plaintiff's request [to present Allan to the jury] had been granted.'
"Plaintiffs cite numerous decisions to support their claim that Allan had an absolute constitutional right to be in court during his trial. None is authority for the proposition that the plaintiff in a personal injury action who can neither contribute evidence on the question of fault nor comprehend the proceedings is entitled as a matter of constitutional right to be present in court when the liability issue is litigated even though fully and adequately represented by counsel.
"The rights of this plaintiff were protected by the general guardian who brought the action for him and by the attorney selected to represent his interests during the trial. * * *"
We feel that neither the Greyhound Lines case nor the Dickson case, supra, standing alone would be sufficient authority upon which to rest our decision. However, the two cases viewed together shed some light on what we consider to be the correct adjudication.
The Greyhound Lines case, supra, was an action to recover damages resulting from a collision. That portion of the opinion, which we have heretofore quoted, seems to be concerned with the physical condition of the litigant. The Minnesota Court, in the *511 Dickson case, supra, is bothered by the mental and physical state of the plaintiff. The Court, in Dickson, supra, stresses the fact that Allan Dickson, the injured party, was represented in court by a general guardian, who brought the action for him. We note that in Dickson, supra, the injured youth was described as being little more than a "vegetable." He was unable to express or sustain himself, was helpless and entirely dependent on others, and wholly unable to comprehend trial proceedings. And, as above pointed out, he was represented by a general guardian.
Under the circumstances, as described in the Dickson case, supra, we can easily comprehend why the Court reached the decision it did. In the case sub judice, however, the plaintiff is described as being "argumentative, somewhat irrational and of such mental attitude and physical appearance that the jury might be influenced." As pointed out in the Greyhound Lines case, supra, the physical appearance of plaintiff is not a basis upon which to exclude him from the courtroom. The Court in that case added that certain precautions could be taken to keep the jury from being influenced. Those same precautions could be taken in the instant case.
In reference to the lower court's findings that plaintiff was argumentative and somewhat irrational, we are not convinced that these findings express a sufficient basis to exclude plaintiff from his own trial. The mental attitude of plaintiff is expressed in such vague terms that absent more specific findings we do not see how his attitude would influence the jury.
Plaintiff instituted this cause of action; he had no guardian to represent him; and in absence of a showing that he was incompetent or so incapacitated that he could not comprehend the trial proceedings, he had a right to be present in the courtroom.
Thus, having determined that there must be a reversal of the case in light of the above, it becomes unnecessary for us to consider Points I and II.
Reversed and remanded for a new trial.
LILES, C.J., and SHANNON, J., and KING, JAMES LAWRENCE, Associate Judge, concur.