**Dwight GAGE, Appellant (Plaintiff Below),**

**v.**

**Clarence G. BOZARTH and Kevin W. Bozarth, Appellees (Defendants Below).**

**No. 92A03–8607—CV—178.**

Court of Appeals of Indiana, Third District.

March 17, 1987.

Rehearing Denied May 4, 1987.

Robert Owen Vegeler, Beers, Mallers, Backs, Salin & Larmore, Fort Wayne, for appellant.

William E. Borror, Thomas L. Wooding, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellees.

HOFFMAN, Judge.

Plaintiff Dwight Gage brings this interlocutory appeal from the Whitley Circuit Court's granting of defendants Clarence and Kevin Bozarths' motion to exclude Gage from the courtroom during the liability phase of their trial.

The relevant facts of this case are as follows: On March 5, 1983, three-year-old Dwight Gage was struck by an automobile driven by Kevin Bozarth and owned by Clarence Bozarth. The accident, for which Gage seeks damages, rendered the now seven-year-old Gage a quadriplegic and dependent upon a ventilator to breathe. The Bozarths successfully moved to have the trial bifuricated into liability and damages portions and requested that Gage be excluded from the courtroom during the liability phase of the trial. After a hearing where the Bozarths presented evidence that Gage's presence in the courtroom during the liability phase of the trial would be prejudicial to them and that Gage's presence in the courtroom was not needed to aid in the presentation of his case, the trial court granted the Bozarths' motion to exclude Gage from the courtroom during the liability phase of the trial. The order of the trial court was certified and this interlocutory appeal ensued.

This Court must first determine if it is ever proper to exclude a plaintiff from a courtroom because of potential prejudice resulting from the plaintiff's appearance or behavior. Both parties here agree that this question is one of first impression in Indiana. In the case of *Ziegler v. Funkhouser* (1908), 42 Ind.App. 428, 432, 85 N.E. 984, 986, this Court stated that "[i]t is the right of every party litigant to be present in person in court upon the trial of his own case ...," but this statement was made in a context that makes it inapplicable to the case at bar. The court in *Ziegler* set aside a default verdict against a defendant who was sick and unable to come to court, finding both excusable negligence and that she had the right to come to court and defend against claims filed against her. 42 Ind.App. at 432, 85 N.E. at 984. There being no Indiana case law on the issue presented by Gage, decisions of the states whose courts have dealt with the exclusion of a plaintiff from the courtroom may be of assistance.

The Supreme Court of Florida found no error in a trial court's allowing a plaintiff confined to a stretcher to appear at trial:

"One who institutes an action is entitled to be present when it is tried. That, we think, is a right that should not be tempered by the physical condition of the litigant. It would be strange, indeed, to promulgate a rule that a plaintiff's right to appear at his own trial would depend on his personal attractiveness, or that he could be excluded from the court room if

he happened to be unsightly from injuries which he was trying to prove the defendant negligently caused."

*Florida Greyhound Lines v. Jones* (1952) Fla., 60 So.2d 396, 397.

The District Court of Appeals of Florida followed the *Florida Greyhound* decision in the cases of *Purvis v. Inter-County Telephone & Telegraph Co.* (1967) Fla., 203 So.2d 508 (reversal of the trial court because plaintiff improperly barred from the courtroom) and *Talcott v. Holl* (1969) Fla., 224 So.2d 420 (no error found in allowing incapacitated plaintiff into the courtroom to be used as demonstrative evidence of brain damage). The Supreme Courts of Missouri and South Dakota have also held that injured plaintiffs should not be excluded from their trials. The courts in *Bryant v. Kansas City R. Co.* (1921) 286 Mo. 342, 228 S.W. 472 (nine-year-old plaintiff with amputated leg due to accident involving a street car) and *Sherwood v. City of Sioux Falls* (1898) 10 S.D. 405, 73 N.W. 913 (plaintiff brought into courtroom on a cot) found that the plaintiffs in those cases had a right to be present in the courtroom during their trials.

The New York Supreme Court, Appellate Division, found a constitutional right, unaffected by plaintiff's representation by counsel, for a plaintiff to be present at all times in the courtroom:

"In my opinion, therefore, the fundamental constitutional right of a person to have a jury trial in certain civil cases includes therein the ancillary right to be present at all stages of such a trial, except deliberations of a jury."

*Carlisle v. County of Nassau* (1978) 64 A.D.2d 15, 408 N.Y.S.2d 114, 116.

The *Carlisle* court appears to find a right for a plaintiff to be present in the courtroom at all times regardless of any possible bifurication of the proceedings into a liability portion and a damages portion. However, it is important to note that there was no evidence from the opinions in *Florida Greyhound, supra; Talcott, supra; Bryant, supra* or *Sherwood, supra* that the trial proceedings they reviewed were

bifuricated into separate liability and damages proceedings.

State courts in Minnesota and Arizona have held that it is permissible, under certain guidelines, for a trial court to exclude an injured plaintiff from the courtroom during trial. In *Dickson v. Bober* (1964) 269 Minn. 334, 130 N.W.2d 526, the Supreme Court of Minnesota found no error in the trial court's order barring a plaintiff, who had been so injured in a motorcycle accident as to be unable to testify or understand proceedings, from appearing at trial. The *Dickson* court found that the rights of the plaintiff were adequately protected by his guardian and by the attorney selected to represent his interests during the trial. 130 N.W.2d at 530. The Supreme Court of Arizona, in *Morley v. Superior Court of Arizona, etc.* (1981) 131 Ariz. 85, 638 P.2d 1331, followed *Dickson* in upholding the exclusion of a comatose plaintiff from the courtroom during the liability phase of the trial. The *Morley* court in so holding discussed the competing interests of the right of the plaintiff to be present and the defendant's right to an impartial jury:

"A plaintiff unable to at least communicate with counsel will have no right denied by exclusion from the courtroom during the liability phase of the trial. If in addition the plaintiff's physical condition, allegedly caused by the defendant, is so pitiable that the trial court determines the plaintiff's mere presence would prejudice the jury, then failure to exclude the plaintiff during the liability phase would deny the defendant's right to an unbiased jury when the source of the bias is totally irrelevant to the liability issue."

638 P.2d at 1334.

The *Morley* court also pointed out that the plaintiff's presence, and any other evidence of his injuries, was allowable and relevant during the damages portion of the bifuricated trial. 638 P.2d at 1334.

The Southern District of Ohio concluded that minor plaintiffs, who were claiming that their birth defects were caused by the drug Bendectin, were not able to testify or meaningfully consult with counsel and that

"the unfair prejudicial effect of [the children] is beyond calculation" and thus it was not error for the trial court to exclude those chidren from the courtroom. *In re Richardson-Merrill, Inc. Bendectin Products* (S.D.Ohio 1985) 624 F.Supp. 1212, 1224. The *In re Richardson-Merrill* court stated that the potential of a biased jury caused by the presence of the plaintiffs was a valid concern for the trial court:

"If the battle is emotional alone, between newborn infants and big business, there can be but one winner. Emotional battles, however, should not be staged in the federal courtroom. We deal in liability imposed not by emotion but by the law." 624 F.Supp. at 1224.

The United States Court of Appeals, Sixth Circuit, found in the case of *Helminski v. Ayerst Lab., a Div. of A.H.P.C.* (6th Cir.1985) 766 F.2d 208 that a plaintiff may be excluded from the courtroom by the trial court:

"Neither the Fifth Amendment's due process clause nor the Seventh Amendment's guarantee of a jury trial grants to a civil litigant the absolute right to be present personally during the trial of his case." 766 F.2d at 213.

The *Helminski* opinion, which was relied upon by the Southern District of Ohio in *In re Richardson-Merrill*, held that the exclusion of the plaintiff from the liability phase of the trial comports with due process if the defendant can show that prejudice will result from the plaintiff's presence and that the plaintiff is unable to assist his counsel. 766 F.2d at 218.

■ Though the question of whether or not a trial court is ever allowed to exclude a plaintiff from a courtroom is one of first impression in Indiana, this Court's decision is ultimately guided by well-settled principles regarding the administration of trial proceedings in this state. It is in the trial court's discretion to control the trial proceedings so as to keep the jury from being misled into an improper verdict. *Huntington v. Hamilton; v. Hanna Judge* (1947), 118 Ind.App. 88, 97, 73 N.E.2d 352, 355, *trans. denied.* It is the duty of the trial court to see that the fundamental right of due process for both parties is not improperly denied. *Kaiser Alum. & Chem. Sales v. Dickerhoff* (1964), 136 Ind.App. 258, 261, 199 N.E.2d 719, 721. The constitutional right to a trial by jury in civil cases, as granted by Art. 1, § 20 of the Indiana Constitution, is to be scrupulously guarded by our courts. *Kettner v. Jay* (1940), 107 Ind.App. 643, 645, 26 N.E.2d 546, 547. In light of this state's policy that the trial court has the power to protect the constitutional guarantees of due process and an impartial jury, the trial courts do have discretion to exclude plaintiffs from the courtroom during the liability phase of their trials.

This discretion is, however, not to be unbridled. The plaintiff may only be excluded from the liability phase of a bifurcated trial. It would be improper to ever exclude the plaintiff from the damages portion of the trial, in that the extent of the injuries suffered is relevant to the determination of the amount of damages awarded. *See, Morley, supra,* 638 P.2d at 1334; *Helminski, supra,* 766 F.2d at 217.

It is clear that a standard is needed for determining in what circumstances a plaintiff can be excluded from the liability phase of his trial. The Sixth Circuit in *Helminski, supra,* fashioned a two-pronged test that must be met in order to allow a trial court to exclude a plaintiff from the courtroom. First, the party seeking the exclusion must establish that the plaintiff's appearance or conduct is likely to prevent the jury from performing its duty. 766 F.2d at 218. As the Sixth Circuit points out, it is not enough to show the mere existence of a physical or mental injury. A potentially prejudicial effect on the jury by the presence of that injured plaintiff must be established. 766 F.2d at 218. Secondly, the trial court must determine whether the plaintiff can understand the proceedings and assist counsel in any meaningful way. If the trial court finds that the plaintiff can understand the proceedings and aid counsel, the plaintiff cannot be excluded regardless of prejudicial impact. 766 F.2d 218. This two-pronged *Helminski* test serves to bal-

ance and protect the rights of both parties in the determination of whether to exclude a plaintiff from a courtroom, and Indiana should follow this standard.

Gage argues that several provisions of the United States and Indiana Constitutions would be violated by the exclusion of a party plaintiff from the courtroom.

Gage first alleges that a plaintiff's right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and Art. 1, § 12 of the Indiana Constitution would be violated by the plaintiff's exclusion from the courtroom. The course and conduct of the trial of a civil proceeding must be consistent with due process of law. *See, e.g., Morgan v. Cooper* (1981), Ind.App., 415 N.E.2d 729, 732. Due process secures an absolute right to an opportunity for a meaningful hearing. *Armstrong v. Marzo* (1965), 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.E.2d 62. If a plaintiff is unable to comprehend the proceedings or assist counsel, a prerequisite for any potential exclusion from the courtroom, that plaintiff's presence is not necessary in order to conduct a meaningful hearing as required by due process. The plaintiff's right to due process is adequately protected by the presence of counsel representing him even if the plaintiff is excluded from the courtroom:

> "We believe that the extent of a civil litigant's right to be present at trial is appropriately analyzed under the due process clause of the Fifth Amendment. Consistent with due process the right to be present may be sufficiently protected in the party's absence so long as the litigant is represented by counsel."

*Helminski, supra,* 766 F.2d at 213.

*See, also, Dickson, supra,* 130 N.W.2d at 530.

Gage also argues that the exclusion of a plaintiff from the courtroom violates the plaintiff's right to a trial by jury guaranteed by Art. 1. § 20 of the Indiana Constitution. Without the plaintiff's presence, Gage argues, there is no "meaningful" jury trial possible. The presence of counsel for the plaintiff and the opportunity to present evidence and argument in support of his claim keeps a plaintiff's right to a jury trial meaningful, while the inclusion of an injured plaintiff unable to assist counsel or understand the proceedings adds nothing to that right. Article 1, § 20 of the Indiana Constitution guarantees the plaintiff in a civil proceeding a right to a fair and impartial jury, but it does not guarantee that plaintiff a right to a sympathetic jury.

Gage further argues that the exclusion of injured plaintiffs from the courtroom where healthy plaintiffs are allowed to be present violates Art. 1, § 23 of the Indiana Constitution, which guarantees equal privileges to all citizens. It is true that the constitutional guarantee of equal protection of the laws is applicable with respect to civil remedies and proceedings. *See, State ex rel. McCormick v. Sup. Ct. of Knox Co.* (1951), 229 Ind. 118, 124, 95 N.E.2d 829, 832. However, any inquiry into a possible violation of this constitutional guarantee is governed by the following analysis:

> "[A]ll citizens, similarly situated as litigants, are entitled to the same right in the prosecution of suits to enforce or protect their rights, and *this right can be interfered with only to the extent that the public interest and the general welfare demand it.*" (Emphasis added.)

I.L.E. Constitutional Law § 351;

C.J.S. Constitutional Law § 559.

Under the above analysis, an injured plaintiff's right to equal privileges is not impermissibly violated by his exclusion from a courtroom when he is unable to understand the proceedings or assist counsel and the trial court finds his presence has a potentially prejudicial effect on the jury. There is certainly a public interest in having a fair trial regarding liability in civil trials, with a jury unaffected by sympathy or prejudice toward either party. *See, e.g., Huntington,* supra; *Kettner, supra.* Any limitation of a plaintiff's right to be present at trial that is a protection of the public interest in our system of impartial jury trials is thus permissible interference with the injured plaintiff's right to equal privileges under the law.

Gage's final argument is that the trial court's exclusion of him from the liability phase of his trial did not conform to the two-pronged test adopted by this Court.

The procedure followed prior to the decision to exclude Gage's presence from the liability phase of the trial was proper. The defendants Bozarths successfully moved that the trial be bifuricated into separate liability and damages portions, and then moved to have Gage excluded from the courtroom during the liability phase. In a hearing on the motion to exclude, the defendants came forward with evidence that Gage's presence was potentially prejudicial to the jury [1] and that Gage was unable to comprehend the proceedings or assist his counsel.

Since the procedure followed by the court was correct, the only remaining question for review is whether the evidence presented by the defendants Bozarths was sufficient to sustain the trial court's order to exclude Gage from the courtroom during the liability phase of his trial.

The defendants Bozarths adequately showed that the presence of Dwight Gage had the potential to prejudicially affect the jury. The Bozarths presented evidence that the tragedy of Dwight Gage's physical handicaps has provoked widespread media coverage in the Fort Wayne area and city-wide sympathy for his plight. The Bozarths presented undisputed evidence in the form of newspaper photographs which showed that Dwight Gage is a seven-year-old boy confined to a wheelchair and dependent upon a ventilator in order to breathe. In light of these facts, the trial court was justified in its conclusion that the jury's collective view of the hard facts regarding liability could be clouded by an emotional reaction to the plight of Dwight Gage if Gage was allowed to be present in the courtroom.

The Bozarths also presented evidence that showed that Gage was unable to understand the proceedings and assist his counsel. A deposition of Dwight Gage was submitted in support of the Bozarths' motion to exclude Gage from the courtroom. During the deposition, Gage indicated that he did not know the difference between a lie and the truth and that he did not have any recollection of the accident at all. In light of this evidence and the fact that Dwight Gage is only seven years old, the trial court was correct in determining that Gage is unable to understand the proceedings and assist his counsel.

The trial court is affirmed.

Affirmed.

GARRARD, P.J., and STATON, J., concur.

---

1. Dwight Gage was not present in person at the hearing, an absence unexplained by the record. Though it might have been preferrable for the trial court to personally observe Gage, the defendants Bozarths presented unrebutted pictorial evidence regarding Gage's appearance.