60 So.2d 396 (1952)
FLORIDA GREYHOUND LINES, Inc.
v.
JONES et al.
Supreme Court of Florida, Division A.
August 1, 1952.
Rehearing Denied September 23, 1952.
Knight, Smith & Underwood and Blackwell, Walker & Gray, Miami, for appellant.
Nichols, Gaither & Green, Miami, for appellees.
THOMAS, Justice.
This was an action to recover for damages alleged to have been suffered by a husband and wife as a result of the negligent operation of a bus which rammed the rear end of the car in which the appellees were traveling.
Appellant urges most strongly that the trial was so conducted that it could not have been fair and impartial. Their criticisms and complaints are presented in eight questions, seven of which we will undertake to answer.
First, it is contended that harmful reversible error was committed at the time an expert medical witness, Dr. Kuckku, was testifying in appellees' behalf. He was asked by counsel for the appellant if there had not been a substitution of appellees' attorneys at his request, to which he replied in the negative. He was then asked if this had not been done upon his suggestion. Before he answered the second question an objection was interposed, and the judge without ruling demanded the purpose of the inquiry. Appellant's lawyer explained that the witness was being examined in this way in order to determine "whether or not he was concerned with trying to help the plaintiffs' [appellees'] lawsuit." The attorney for appellees again objected, whereupon the court remarked: "Now, I don't want to hear anything from either counsel, and I will not on this point. I want to instruct the Jury that at this point there is no occasion for attributing to this witness or any other medical witness *397 any motives that are not in keeping with the oath which I understand binds medical men." The judge then told counsel, whose questions had precipitated these remarks, that he was entitled to a broad cross-examination but that "at this state there is no basis for it, * * *" meaning, apparently, any challenge of the witness' professional conduct.
We must confess that we do not understand why the allusion to the physician's behavior was made, and we cannot reconcile the apparent disapproval of the question in the first place with an assurance, in the second place, that counsel could not only conduct an extensive examination, but could "develop anything which you wish to develop along any line, including this one * * *." (Italics ours.) He was then referring to the concern of the witness for the success of appellees' case.
The original question seems to have been quite proper as an answer would have shown whether the doctor had taken an interest in the appellees' cause; whether he was so concerned that he had even suggested the employment of different attorneys.
The appellant thinks that the court's comment was a recommendation of the witness' credibility. As we construe it, no such thought was conveyed, but only the judge's idea that at the particular time there was no reason to believe that this medical witness, or any other, had violated the ancient Hippocratic oath, the physician's creed. What there was in the colloquy among lawyers and judge to suggest an instruction to the jury on the matter we cannot say. Although we think the remarks were ill-timed, we are not convinced that they could be interpreted, when viewed in the light of all that occurred at the time, as an imprimatur by the judge of the testimony the witness had given and was to give.
The appellant also feels that an injustice was done it when the judge permitted an investigator, employed by the appellees' attorneys, to sit at the counsel table. We agree with the trial judge that this was a discretionary matter, and we have been shown nothing to indicate an abuse of that discretion or any harm to appellant as distinguished from a probable advantage to appellees from having immediately available such advice and information as the investigator was prepared to offer.
The next challenge to the propriety of the proceeding is based on the court's permitting "THE APPEARANCE OF THE APPELLEE, ANNA JONES, BEFORE THE JURY, WHEN SHE WAS ON A STRETCHER AND, APPARENTLY, IN A WEAK, SICKENED AND STUPIFIED CONDITION AND ATTENDED BY A NURSE AND A HOSPITAL ATTENDANT." The quotation is taken from the appellant's brief.
We think this point is wholly without merit. One who institutes an action is entitled to be present when it is tried. That, we think, is a right that should not be tempered by the physical condition of the litigant. It would be strange, indeed, to promulgate a rule that a plaintiff's right to appear at his own trial would depend on his personal attractiveness, or that he could be excluded from the court room if he happened to be unsightly from injuries which he was trying to prove the defendant negligently caused. The appellee was properly present. If the use of stretcher and attendants was affected there would be occasion for the court to regulate the appearance to prevent the opposite party from being victimized and the jury from being deceived by the subterfuge, but no such deceit is claimed to have been practiced in this trial.
We now reach an instruction that is thought by appellant to have played havoc with the fairness of the trial. The jury was told that if a preponderance of the evidence established the right of the appellee-wife to recover, she was entitled, among other items, to compensation for her diminished earning capacity. This, it it said, was improper because there was no evidence that she had any earning capacity.
The appellant asks us to invoke the general rule that one may not recover for lessened earning capacity unless there be facts from which the extent of the impairment may be computed with reasonable *398 certainty. Without such information, so it is urged, the jury would necessarily indulge in speculation in fixing any sum above nominal damages.
In this case the appellee-wife was awarded a verdict for the sizeable amount of fifty thousand dollars. She was a housewife whose husband was given a verdict of seventeen thousand five hundred dollars which covered the value of her services in that capacity lost to him. True, her worth as a housewife, would even if not included in the husband's judgment, probably be nil if measured in terms of money. In addition to her work in the home she had assisted her husband by clerking in his small grocery store, but there was no evidence about the value of her contribution to that enterprise.
The argument against recovery for loss of diminution of ability to earn seems logical, and yet it is not apropos, in the case of a housewife, at least. In the consideration of this question we are not primarily concerned with loss of earnings but with loss of power to earn. We are inclined to adopt the view of the Supreme Judicial Court of Massachusetts, as expressed in Rodgers v. Boynton, 315 Mass. 279, 52 N.E.2d 576, 151 A.L.R. 475, that a wife may recover for the loss of capacity to earn money that being an injury to her personal rights.
We can see much reason for the holding because it might well happen that a woman who has never earned a cent but has faithfully and successfully discharged her duties as a wife and mother would suddenly be faced, by the loss or disability of her mate, with the necessity to earn money to continue maintaining her home and rearing her brood. At any given time before such an emergency she might be wholly unable to prove she had produced a dime, though she might be qualified to expertness in some field or other. The lack of ability to "carry on" because of some injury would immediately become a very real loss.
This thought leads to the conclusion that the capability of a housewife that has been destroyed or impaired by the negligent act of another may not be ignored in assaying the damage, simply because she had not gathered money in some other activity. The measuring of the loss cannot be put off until another day. If she has been incapacitated, the time would never come for her to demonstrate what she could earn; and after all, there is but one trial  and that is now. We are convinced that the matter should be submitted to the jury as a phase of the damage, as difficult of appraisal as it may be.
The appellant's fifth question is entirely too general to merit an answer: "DID THE COURT BELOW FAIL TO GIVE THE APPELLANT A FAIR AND IMPARTIAL TRIAL?" Our criticism of that form of question has already been recorded. Hunter v. Tyner, 151 Fla. 707, 10 So.2d 492.
By the sixth question the appellant assails the verdict as being so grossly excessive as to indicate the exercise of passion and prejudice by the jury. We do not find it so.
The seventh question is based on the premise that the court passed upon the weight of the testimony in charging the jury. We have examined the charges and have not ascertained that the judge fell into such error.
Lastly, we come to the propriety of assessing against the defendant as part of the costs the expense of copies of depositions and the original transcript of the deposition of the bus driver taken at the behest of the plaintiffs and actually used by them in an attempt at impeachment. The cost of copies was not properly assessible; the cost of the transcript was.
In all respects save the costs of copies of depositions the judgment is affirmed.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.