**Shelamiah D. JORDAN by next friend Geneva JORDAN and Lynn Jordan, Appellants (Plaintiffs),**

v.

**Michael DEERY, M.D., Warren Reiss, M.D., Lake Shore Clinic, Keim Houser, M.D., Holy Cross Hospital, Appellees (Plaintiffs).**

No. 75S05–0106–CV–310.

Supreme Court of Indiana.

Nov. 22, 2002.

Bessie M. Taylor, Taylor and Green, Douglas Grimes, Gary, IN, Attorneys for Appellants.

Mark A. Lienhoop, Newby, Lewis, Kaminski & Jones, LaPorte, IN, Edward A. Chapleau, Chapleau & Kuehl, David Spalding, Robert Palmer, Jane Bennett, May, Oberfell & Lorber, South Bend, IN, Karl Mulvaney, Nana Quay–Smith, Bingham Summers Welsh & Spilman LLP, Indianapolis, IN, Attorneys for Appellees.

## CIVIL TRANSFER

RUCKER, Justice.

This medical malpractice action involving a disabled child has generated three appellate court opinions, an emergency stay and hearing in the Court of Appeals, and an original action in this Court. In this ongoing litigation we hold today that Article I, Section 20 of the Indiana Constitution, which provides that "[i]n all civil cases, the right of trial by jury shall remain inviolate," Ind. Const. art. I, § 20, includes the ancillary right to be present in the courtroom during both the liability and damage phase of trial.

### I. Facts and Procedural History

Geneva Jordan ("Mother") was a prenatal patient of Michael Deery, M.D., and Warren Reiss, M.D., both of whom practiced family medicine at Lakeshore Clinic in Culver, Indiana. On December 8, 1986, one week before her due date, Mother began experiencing uterine contractions. In the early morning hours of December 9, 1986, she went to Holy Cross Hospital in Plymouth, Indiana, where she was examined by emergency room staff and advised to go home. Mother returned to the hospital at 7:00 a.m. that same day and was again examined and advised to go home. This time, however, she decided to wait at the hospital and was examined twice more throughout the course of the day. Finally, at 6:10 p.m., Mother was admitted into the hospital as a patient in active labor. Approximately twenty minutes after attaching electronic fetal monitors, the nurses noted signs of fetal distress. Dr. Reiss then transferred Mother to South Bend Memorial Hospital in case a Caesarian delivery was necessary. Keim Houser, M.D., the obstetrician on call at South Bend Memorial, examined Mother and determined that a Caesarian delivery was unnecessary. Following a delivery complicated by shoulder dystocia [1] and the umbilical cord wrapped around the infant's neck.[2] Shelamiah Jordan was born at 2:17 a.m. on December 10, 1986. Shortly thereafter, she was diagnosed with fetal distress, asphyxia, cerebral palsy, and Erb's palsy of the left arm.

On December 3, 1988, Geneva Jordan and Lynn Jordan, the parents of Shelamiah, filed a proposed medical malpractice complaint with the Indiana Department of Insurance. The Jordans alleged that the negligence of Dr. Deery, Dr. Reiss, Lake Shore Clinic, Holy Cross Hospital, and Dr. Houser (referred to collectively as "Healthcare Providers") occurring during labor and delivery resulted in personal in-

---

1. Shoulder dystocia occurs when an infant's shoulder becomes lodged behind the mother's pubic bone and impedes its progress through the birth canal. *The Merck Manual* 1906 (Robert Berkow, M.D., ed., 16th ed. 1992).

2. *See* R. at 1149.

juries to both Mother and Shelamiah. On May 4, 1990, the Medical Review Panel issued a unanimous opinion in favor of Healthcare Providers.

Thereafter, on their own behalf and acting as Shelamiah's next friends, the Jordans filed a complaint for medical malpractice in the trial court. In response, Healthcare Providers moved for summary judgment, which the trial court granted. Shelamiah and the Jordans appealed, and the Court of Appeals affirmed the trial court. *Jordan v. Deery,* 590 N.E.2d 669 (Ind.Ct.App.1992). On transfer, this Court concluded that although the summary judgment motion was properly granted on the Jordans' claims because of the statute of limitations, the motion was improperly granted on Shelamiah's claims. *Jordan v. Deery,* 609 N.E.2d 1104, 1108 (Ind.1993). We remanded the cause for trial.

Prior to trial, Healthcare Providers filed a motion to bifurcate the liability and damages phases. The trial court granted the motion. Healthcare Providers then filed a motion in limine requesting that Shelamiah be excluded from the courtroom during the liability phase of trial. According to Healthcare Providers, Shelamiah was unable to consult with counsel, and her presence would prejudice the jury.[3]

In support of their motion, Healthcare Providers cited *Gage v. Bozarth,* 505 N.E.2d 64 (Ind.Ct.App.1987), *trans. denied.* In that case the trial court excluded the seven-year-old plaintiff from the courtroom during the liability phase of trial. The record showed that the child was a quadriplegic who was able to breathe only with the help of a ventilator. *Id.* at 65. Citing *Helminski v. Ayerst Laboratories,*

766 F.2d 208, 218 (6th Cir.1985), the Court of Appeals adopted a two-pronged test which must be satisfied before a trial court may exclude a plaintiff from the courtroom during the liability phase of trial: (1) the party seeking the exclusion must show that the plaintiff's presence has a potentially prejudicial effect on the jury; and (2) the trial court must determine whether the plaintiff can understand the proceedings and assist counsel in any meaningful way. *Gage,* 505 N.E.2d at 67. However, if the trial court finds that the plaintiff can understand the proceedings and assist counsel in any meaningful way, then the plaintiff cannot be excluded regardless of the prejudicial impact. *Id.*

In response to Healthcare Providers' motion, Shelamiah argued before the trial court that *Gage* did not survive enactment of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. The ADA is intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.* § 12101(b)(1). Title II of the ADA, which is the public services portion of the Act, provides in pertinent part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications ... meets the essential eligibility requirements for the receipt of services or the partic-

---

**3.** The record shows: Shelamiah suffers from cerebral palsy in all four extremities and Erb's palsy in the left arm, cannot talk, makes involuntary movements and sounds, is sight impaired, and walks with the use of braces and a walker. R. at 42–43, 1149. There is a dispute as to whether Shelamiah can understand the proceedings and communicate with counsel with the use of a laptop computer. R. at 73, 76, 118.

ipation in programs or activities provided by a public entity." *Id.* § 12131(2).

The trial court determined that *Gage* was still good law and after conducting a hearing found that the two-part test set forth in that case had been satisfied. Accordingly, the trial court granted Healthcare Providers' motion in limine. Shelamiah then moved the trial court for certification of its order and a stay pending appeal. The motion was denied. On July 7, 1998, the first day of trial, Shelamiah filed an emergency petition with the Court of Appeals. The court granted the motion, entered an order staying the trial court proceedings, and scheduled the matter for oral argument on July 10, 1998. Following oral argument, the Court of Appeals dissolved the stay and remanded the cause for trial. Before trial resumed on July 13, 1998, Shelamiah filed an original action with this Court, which we dismissed the same day. *State ex rel. Jordan v. Starke Cir. Ct.*, No. 75S00–9807–OR–391 (Ind. July 13, 1998).

The liability phase of trial concluded on July 21, 1998, and the jury returned a verdict in favor of Healthcare Providers. On appeal, Shelamiah renewed her argument that the *Gage* test did not survive enactment of the ADA. In an unpublished memorandum decision, the Court of Appeals affirmed the trial court. *Jordan v. Deery*, No. 75A05–9807–CV–342, 742 N.E.2d 45 (Ind.Ct.App. Dec. 29, 2000). In so doing the Court noted, "The ADA prohibits the forced exclusion from activities of those who could partake with reasonable modifications, but promulgates neither a per se rule of inclusion nor a per se rule of exclusion." Slip op. at 8. The Court of Appeals also concluded that the *Gage* test survived the enactment of the ADA and that the test was satisfied in this case. Having previously granted transfer, we

now reverse the judgment of the trial court.

## II. Discussion

We first observe that a number of jurisdictions still employ the two-pronged *Helminski* test, which the Court of Appeals adopted in *Gage*, even in the face of the ADA. *See, e.g., Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 797 (6th Cir.2002), *cert. denied*, —— U.S. ——, 122 S.Ct. 2663, 153 L.Ed.2d 838 (2002); *Rubert–Torres v. Hosp. San Pablo, Inc.*, 205 F.3d 472, 478 (1st Cir.2000); *Green v. North Arundel Hosp.*, 126 Md. App. 394, 730 A.2d 221, 234 (1999) (listing courts that have adopted *Helminski*). Further, although the ADA has been in effect for more than a decade, our research shows that no court, state or federal, has decided whether the *Helminski* test is viable in light of the ADA. *See, e.g., Thompson v. Colorado*, 278 F.3d 1020, 1032 (10th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002) (recognizing that *Helminski* protects a category of rights required to be given some degree of accommodation under the Fourteenth Amendment's due process clause while also recognizing that the due process clause does not contain the general mandate of Title II of the ADA); *Green*, 730 A.2d at 233 n. 14 (assuming without deciding that the *Helminski* test survived the enactment of the ADA); Matthew A. Sokol, *Cary v. Oneok, Inc.: Oklahoma Supreme Court Upholds Plaintiff's Right to Attend Trial*, 19 Pace L.Rev. 195, 214 (1998) ("The issue of whether the [ADA] gives rise to a cognizable cause of action for a plaintiff who is excluded from trial is yet to be litigated."). In fact, the weight of authority suggests that the *Helminski* test has survived enactment of the ADA. Nonetheless, after considerable deliberation, we agree with Shelamiah that *Gage* is no longer good law, but for an

entirely different reason, namely: Article I, Section 20 of the Indiana Constitution.

### A. Rules of Constitutional Construction

■■■■■■ Generally, questions arising under the Indiana Constitution are to be resolved by examining the intent of the framers, the language of the text in the context of the history surrounding its drafting and ratification, and case law interpreting the specific provisions. *McIntosh v. Melroe*, 729 N.E.2d 972, 974 (Ind. 2000). However, these "constitutional talismans" or guideposts are not always instructive. *Id.* Under such circumstances, it becomes appropriate to look elsewhere, including case law from other states interpreting similar provisions in their constitutions. *Id.; see also Ajabu v. State*, 693 N.E.2d 921, 934 (Ind.1998).

### B. Historical Development of Right to Trial by Jury

When the right to trial by jury was incorporated into the 1816 and 1851 Indiana Constitutions, it was hardly a novel concept. Some scholars trace this right as far back as ancient Greece and the Athenian statesman Solon. Richard S. Arnold, *Trial by Jury: The Constitutional Right to a Jury of Twelve in Civil Trials*, 22 Hofstra L.Rev. 1, 6 (1993). Other scholars trace this right only to the Middle Ages and the reign of William the Conqueror. *Id.* Regardless of its origins, at least by the eleventh century, the right to trial by jury was firmly established in England. The Magna Carta, signed by King John on June 15, 1215 at Runnymede, guaranteed the right to a jury trial.

And during the next one hundred years, the English kings reaffirmed the Magna Carta thirty-eight times. By the 1600s, when the thirteen colonies were founded, the right to trial by jury "had become one of the great palladiums of English liberty." *Id.* at 13. The English regarded this right " 'as a bulwark of liberty, and as a means of preventing oppression by the Crown.' " Stephan Landsman, *The Civil Jury in America: Scenes from An Unappreciated History*, 44 Hastings L.J. 579, 591 (1993) (quoting Austin W. Scott, *Trial by Jury and the Reform of Civil Procedure*, 31 Harv. L.Rev. 669, 676 (1918)).

The colonists brought the right to trial by jury with them from England. The 1606 charter given by James I to the Virginia Company incorporated the right to a jury trial, and by 1624 all trials in Virginia, both civil and criminal, were by jury. In 1628, the Massachusetts Bay Colony introduced jury trials, and the right to a jury trial was later codified in the Massachusetts Body of Liberties in 1641. The Colony of West New Jersey implemented trial by jury in 1677, as did New Hampshire in 1680 and Pennsylvania, under William Penn's proprietorship, in 1682. Arnold, *supra*, at 13; Landsman, *supra*, at 592. Eventually, all colonies embraced trial by jury.

Nevertheless, through various measures, the King of England tried to dilute the right to a jury trial. Beginning in the mid–1770s, the colonists held a series of congresses to address the King's oppressive behavior.[4] The work of the congress-

---

4. Meeting in 1774, The First Continental Congress resolved among other things " 'the respective colonies are entitled to the common law of England, and more especially to the great and inestimable privilege of being tried by their peers of the vicinage, according to the course of that law.' " Landsman, *supra*, at 596 (quotation omitted). The colonists' concern about jury trials was reiterated in the Second Continental Congress' Declaration of the Causes and Necessity of Taking Up Arms, issued in July 1775, which specifically challenged Parliament's passage of statutes " 'depriving ... [the colonies] of the accustomed

es culminated in the Declaration of Independence signed on July 4, 1776. Indeed, The Declaration of Independence lists the denial of " 'the benefits of trial by jury' " as one of the grievances that led to the creation of a new nation. Arnold, *supra*, at 14; Landsman, *supra*, at 596 (both quoting *The Declaration of Independence* para. 19 (U.S. 1776)).

Considering the actions the colonists took to safeguard and preserve the right to trial by jury, it is no surprise that this right was exceedingly popular with the drafters of the first constitutions of the newly independent states. Virginia set precedent in 1776 by specifically including the right to both civil and criminal jury trials in its bill of rights. The majority of other states quickly followed suit.[5] Landsman, *supra*, at 596.

### C. History Surrounding Adoption of Article I, Section 20

The first constitutional reference to jury trials in this State appeared in Article I, Section 5 of the 1816 Constitution, which provided:

> That in all civil cases, where the value in controversy shall exceed the sum of twenty dollars, and in all criminal cases, except in petit misdemeanors which shall be punished by fine only, not exceeding three dollars, in such manner as the legislature may prescribe by law, the

right of trial by jury shall remain inviolate.

Ind. Const. of 1816, art. I, § 5. When delegates met again in late 1850 and early 1851 to draft a new constitution, a committee on rights and privileges was formed. This committee was charged with, among other things, deciding whether to extend the right of trial by jury as it existed in the 1816 Constitution. 1 *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana* 226 (A.H. Brown ed., 1850). The committee focused primarily on whether there should be a minimum amount in controversy before the right to trial by jury was implicated and whether the civil and criminal right to trial by jury should be contained within the same section. *Id.* at 352–53; *Journal of the Convention of the People of the State of Indiana to Amend the Constitution* 80, 90, 204 (Austin H. Brown ed., 1851) (reprint 1936). In the end, the following version prevailed: "In all civil cases, the right of trial by jury shall remain inviolate."[6] Ind. Const. art. I, § 20.

### D. Case Law Interpreting Article I, Section 20

Despite the lack of debate concerning the enactment of Article I, Section 20, appellate courts of this State have examined this provision on numerous occasions. With very few exceptions, the courts have addressed it in the context of the meaning

---

and inestimable privilege of trial by jury, in cases affecting both life and property.' " *Id.* (quotation omitted).

**5.** By 1788, eight of the eleven states had incorporated the right to trial by jury in civil cases into their constitutions: Pennsylvania, New Jersey, Georgia, Massachusetts, Maryland, New Hampshire, Virginia, and New York. Rachael E. Schwartz, *"Everything Depends on How You Draw the Lines": An Alternative Interpretation of the Seventh Amendment*, 6 Seton Hall Const. L.J. 599, 617–18

(1996). Today, the vast majority of states guarantee the right to trial by jury in civil cases in their constitutions. *See* Ora Fred Harris, Jr., *Complex Product Design Litigation: A Need for More Capable Fact-Finders*, 79 Ky. L.J. 477, 482 (1991).

**6.** Article I, Section 13(a) of the Indiana Constitution guarantees the right to trial by jury in criminal cases. *See* Ind. Const. art. I, § 13(a).

of "shall remain inviolate." Since 1877, when the Indiana Supreme Court declared that "shall remain inviolate" means "continue as it was" at common law, *Allen v. Anderson,* 57 Ind. 388, 389, 1877 WL 6470 (1877), the courts have explained that the right to trial by jury is preserved only in those cases that were triable by jury at common law. *See, e.g., State ex rel. Van Orden v. Floyd Cir. Ct.,* 274 Ind. 597, 412 N.E.2d 1216, 1218 (1980); *Hayworth v. Bromwell,* 239 Ind. 430, 158 N.E.2d 285, 287 (1959); *Coca Cola Bottling Works v. Harvey,* 209 Ind. 262, 198 N.E. 782, 782 (1935); *Reynolds v. State,* 698 N.E.2d 390, 394 (Ind.Ct.App.1998), *trans. denied.* Otherwise, this provision has not been the subject of much litigation.

### E. Case Law from Other Jurisdictions

The question of whether a plaintiff can be excluded from the courtroom during the liability phase of trial has been litigated in several jurisdictions across the country. Some of the jurisdictions answering this question in the negative have relied on provisions in their state constitutions guaranteeing a right to trial by jury. For example, in *Carlisle v. Nassau County,* 64 A.D.2d 15, 408 N.Y.S.2d 114 (1978), the trial court excluded from the courtroom during jury selection a paraplegic plaintiff who was confined to a wheelchair. According to the trial court, the plaintiff's presence would prejudice the jury. On appeal, the plaintiff challenged his exclusion. In its analysis, the court looked to the historical development of the right to trial by jury and Article I, Section 2 of the New York Constitution, which provides: "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever...." *Id.* at 116 (quoting N.Y. Const. art. I, § 2). The court concluded that "the fundamental constitutional right of a person to have a jury trial in certain civil cases includes therein the ancillary right to be present at all stages of such a trial." *Id.* The court went on to observe that a judicial determination that the physical appearance of a party "may be the basis for precluding such party from any stage of a trial[ ] is fraught with danger in its implications." *Id.* at 118. The court concluded that the plaintiff was entitled to a new trial.

In *Florida Greyhound Lines, Inc. v. Jones,* 60 So.2d 396 (Fla.1952), the plaintiff was injured in an automobile collision and at trial was brought into the courtroom on a stretcher, accompanied by a nurse and hospital attendant. The defendant objected, arguing that the plaintiff's presence would prejudice the jury. The trial court overruled the objection and ultimately the jury returned a verdict for the plaintiff. Responding to the defendant's claim on appeal that the plaintiff should have been excluded from the courtroom during trial, the Florida Supreme Court concluded:

> One who institutes an action is entitled to be present when it is tried. That, we think, is a right that should not be tempered by the physical condition of the litigant. It would be strange, indeed, to promulgate a rule that a plaintiff's right to appear at his own trial would depend on his personal attractiveness, or that he could be excluded from the court room if he happened to be unsightly from injuries which he was trying to prove the defendant negligently caused.

*Id.* at 397. The court ultimately determined that the plaintiff's presence at trial was proper, absent any proof of "deceit" or "subterfuge." Finding neither, the judgment of the trial court was affirmed.

Though factually different from the case at bar, in *Rozbicki v. Huybrechts,* 218 Conn. 386, 589 A.2d 363 (1991), the Connecticut Supreme Court examined the na-

ture of a party's right to be present in the courtroom during the jury selection phase of trial. Like the *Carlisle* court, the Connecticut Supreme Court looked to Article I, Section 19 of its constitution, which provides: "The right of trial by jury shall remain inviolate...." *Id.* at 365 (quoting Conn. Const. art. I, § 19). The court then observed that it "has long recognized that a party's constitutional right to a civil jury trial encompasses the right to be present in the court during all phases of the trial, including proceedings prior to the trial on the merits of the case." *Id.*

In *Cary v. Oneok, Inc.*, 940 P.2d 201 (Okla.1997), the Oklahoma Supreme Court reached the same conclusion as the *Rozbicki* court relying on a different provision in its constitution. In that case, the trial court excluded from the courtroom during the liability phase of trial, a six-year-old plaintiff who was severely burned by an exploding water heater. According to the trial court, the jury might be sympathetic to the child's disfigurement. On appeal, the plaintiff challenged his exclusion. Relying on the "open courts"[7] provision in its constitution, the Oklahoma Supreme Court concluded that "[a]bsent a voluntary waiver we hold that only in the case of extreme circumstances may a party be excluded from the proceedings." *Id.* at 204. Finding neither waiver nor extreme circumstances, the court remanded the cause for a new trial. *Id.* at 204, 206. Other courts have reached similar conclusions without a great deal of elaboration. For example, in *Mason v. Moore*, 226 A.D.2d 993, 641 N.Y.S.2d 195 (1996), the infant plaintiff sustained severe brain damage during de-

livery as a result of asphyxia. The defendant unsuccessfully moved to exclude the infant plaintiff from the courtroom during trial. On a challenge to the ruling on appeal, the court simply stated "[i]t is axiomatic that, absent an express wavier or unusual circumstances, a party to a civil action is entitled to be present during all stages of the trial." *Id.* at 197. Finding neither, the court affirmed the trial court. *See also Chicago Great W. Ry. Co. v. Beecher*, 150 F.2d 394, 399 (8th Cir.1945) (holding that the plaintiff, a child under three years of age who was struck by a train, properly remained in the courtroom during trial despite the defendant's objection); *Bryant v. Kansas City Rys. Co.*, 286 Mo. 342, 228 S.W. 472, 475 (1921) (holding that the plaintiff, a four-year-old child with an amputated leg, should be allowed to remain in the courtroom during trial so long as he was not paraded in front of the jury to gain sympathy); *Sherwood v. City of Sioux Falls*, 10 S.D. 405, 73 N.W. 913, 914 (1898) (allowing the plaintiff to be brought into the courtroom on a cot despite the defendant's objection that the plaintiff's appearance would prejudice the jury).

### E. Scope of Article I, Section 20

 After examining the historical development of the right to trial by jury and, in particular, its importance to the founders of this country, we agree with those jurisdictions that have held that the state constitutional right of trial by jury includes the ancillary right to be present in the courtroom during both the liability and damage phase of trial. This is so because

---

7. Article II, Section 6 of the Oklahoma Constitution provides in part, "The courts of justice of the State shall be open to every person...." Okla. Const. art. II, § 6. Similarly, Article I, Section 12 of the Indiana Constitution provides: *"All courts shall be open;* and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily and without delay." Ind. Const. art. I, § 12 (emphasis added).

without the right to be present, the right to trial by jury becomes meaningless. We also note, this view is consistent with case law from our Court of Appeals. *See Freimann v. Gallmeier,* 116 Ind.App. 170, 63 N.E.2d 150, 153 (1945) ("Citation of authority is not required to sustain the proposition that a party to an action is entitled to be personally present in court when a trial is held in which he, or she, is a party of record."); *Ziegler v. Funkhouser,* 42 Ind.App. 428, 85 N.E. 984, 986 (1908) ("It is the right of every party litigant to be present in person in court upon the trial of his own case...."). In our view, the right to be present in the courtroom during both the liability and damage phase of trial is so basic and fundamental that it is, by implication, guaranteed by Article I, Section 20. Accordingly, we conclude that the test announced in *Gage* is not sufficient to overcome Shelamiah's constitutional right to be present at her own trial. Rather, absent waiver or extreme circumstances, a party may not be so excluded.

### III. Conclusion

Article I, Section 20 of the Indiana Constitution provides: "In all civil cases, the right of trial by jury shall remain inviolate." Ind. Const. art. I, § 20. We hold that this right includes also the ancillary right to be present in the courtroom during the liability and damage phase of trial. Absent waiver or extraordinary circumstances, a party may not be so excluded. Because neither waiver nor extraordinary circumstances exist here, the judgment of the trial court is reversed and this cause remanded for a new trial.[8]

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

BOEHM, J., dissents with separate opinion.

BOEHM, Justice.

I respectfully dissent. The majority's formulation allows for the possibility that "extraordinary circumstances" can warrant exclusion of a party. But if this case does not present extraordinary circumstances, except for incarcerated litigants it seems that no circumstances could meet this test. It thus is in practical terms an absolute right to a jury trial in civil cases. I agree with the majority that the right to a trial includes a very strong presumption that a party has the right to be physically present at the trial. However, I do not believe this presumption stems from the right to a jury trial in a civil case. Nor in my view does any other provision of the state or federal constitution bar exclusion of a party if the trial court finds that "extraordinary circumstances" require it. Accordingly, I would reaffirm the standard announced by the Court of Appeals in *Gage v. Bozarth,* 505 N.E.2d 64 (Ind.Ct. App.1987), and allow a plaintiff to be excluded in a bifurcated trial in the unusual circumstances when a party establishes that another party's "appearance or conduct is likely to prevent the jury from performing its duty" and the trial court has determined the other party cannot "assist counsel in any meaningful way." *Id.* at 67–68.

The proposition that a party is entitled to be present at a civil trial seems intuitive to most American lawyers and judges. Yet the source of such a right, if there is one, is rarely explored. The presumptive

---

**8.** We decline to articulate a bright-line rule to determine what are and what are not "extraordinary circumstances." Such determinations must be made on a case-by-case basis. We merely observe that on this record extraordinary circumstances have not been shown.

or absolute right of a civil litigant to be present at trial is not found in the text of any provision in either the federal or state constitutions. Until now, *Gage* was the only relevant precedent in the state. The Court of Appeals in that case held that there is no absolute right to be present in the liability phase of a civil personal injury case. Rather, if the party's presence did not serve the purpose of assisting counsel, but would risk prejudicing the jury, exclusion may be proper. The federal courts follow the same rule. *See Gonzalez–Marin v. Equitable Life Assurance Soc'y*, 845 F.2d 1140, 1146 (1st Cir.1988); *Helminski v. Ayerst Labs.*, 766 F.2d 208, 218 (6th Cir.1985).

It seems to me that the source of this right is instructive in determining its scope. I believe the right to be present derives not from the right to a jury trial, but from both the federal right to due process of law and the concept of fundamental fairness in judicial proceedings that is implicit, if not explicit, in our state constitution. Because it stems from procedural fairness, the right is not absolute and must be balanced against considerations of fairness to other parties. As a result, I agree with the authorities that have concluded there is a right to be present if a party can meaningfully communicate with counsel, but if not, the presence of the party is subject to a balancing test in which fairness to other parties is a proper consideration. This balancing is fact sensitive and deference should be shown to the trial court's ruling. Accordingly, I would affirm the trial court.

## I. Source of the Right to be Present

### A. *The Right to a Jury Trial*

The majority concludes that the right to be present is ancillary to the right to trial by jury. I think this is contrary to precedent, and also leads to incongruous results.

First, there is little authority for the view that the jury trial right includes an absolute right to be present. There are some differences between state and federal rights to a civil jury. But I am aware of no difference between the two constitutions in the procedures to be followed if a jury is required. Rather, both constitutions purport to preserve the jury right as it existed at common law. Any differences between the two are in the types of lawsuit in which the right to a jury trial attaches, not to what that right entails if it applies. *Compare Songer v. Civitas Bank*, 771 N.E.2d 61 (Ind.2002), *with City of Monterey v. Del Monte Dunes, Ltd.*, 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). Accordingly, federal precedent is relevant in determining what rights are ancillary to the right to a jury trial.

As far as I can determine, no federal court has found that the right to be present at trial is guaranteed by the right to a jury trial in a civil case. To the contrary, the Seventh Amendment right to a jury trial does not guarantee a civil litigant an absolute right to be present during the trial. Federal precedent, like prior Indiana precedent, is clear on this point. *See Helminski*, 766 F.2d at 213 (noting due process, not the Seventh Amendment, is the source of any right to be present); *see also Harris v. King*, No. 96–2452, 1997 WL 792472, at *1, 1997 U.S.App. LEXIS 36353, at *3 (8th. Cir.1997) (unpublished); *Latiolais v. Whitley*, 93 F.3d 205, 207–08 (5th Cir.1996), *American Inmate Paralegal Ass'n v. Cline*, 859 F.2d 59, 62 (8th Cir.1988) (per curiam).

Finally, if the right is derived from the right to a jury trial, it would not be equally available in a bench trial. Although I find little direct relevant authority, it seems to me that the right to be present is at least as strong in a bench trial where the countervailing factor of fairness to the other

party may be of diminished weight. Thus both precedent and reason lead me to reject the jury trial right as the source of the right to be present.

### B. *Due Process*

Federal cases addressing this issue have balanced considerations of fairness to the excluded party against any prejudice to interests of others. *See Helminski,* 766 F.2d at 213 (party's appearance is not alone a basis to exclude, but exclusion may be proper if there is no meaningful opportunity to communicate). Excluding a litigant who can effectively communicate with counsel would deny the litigant the opportunity to be heard and frustrate the very notions of fairness that the Due Process Clause protects. And I agree that there is no merit to the claim that retention of counsel waives the right to be present. *Carlisle v. Nassau County,* 64 A.D.2d 15, 408 N.Y.S.2d 114, 117 (1978). But if a party cannot assist counsel in any meaningful way, fairness to that party becomes a factor of diminished weight. And if the party's presence may, as *Gage* puts it, "prevent the jury from performing its duty," fairness to the other parties is also entitled to consideration. If that occurs, and there is no opportunity for meaningful communication, the balance of fairness tips in favor of exclusion, and due process does not bar this result. *Gage,* 505 N.E.2d at 67. Indeed, weighing the interests involved and then barring a party from being present occurs with some regularity at the trial court level in other contexts. For example, challenges to the right to exclude a litigant are most prevalent in cases where a litigant is incarcerated. In such cases, the incarcerated civil litigant's right to be present is not absolute. In determining whether to exclude the litigant, the court must weigh the prisoner's need to be present against concerns of expense, security, logistics and docket control. *Mu-*

*hammad v. Warden, Baltimore City Jail,* 849 F.2d 107, 111–12 (4th Cir.1988). As a result, an incarcerated civil litigant is often barred from the courtroom. To be sure, the district court may not summarily exclude a prisoner-plaintiff from the trial of his civil rights suit. *Ballard v. Spradley,* 557 F.2d 476, 480 (5th Cir.1977); *Stone v. Morris,* 546 F.2d 730, 735 (7th Cir.1976). But there are a variety of factors that must be balanced in reaching this decision. Just as the trial court has discretion to deny prisoner-plaintiffs the right to be present on procedural grounds, in my view trial courts also have discretion to deny other litigants access to some phases of a trial in those rare cases where that action is appropriate.

### C. *Other State Constitutional Sources*

As the majority notes, Indiana constitutional history sheds little light on the presence vel non of an absolute right to be present in a civil trial and *Gage* is the only relevant precedent in this state. Most states follow the federal rule in this respect and permit exclusion where communication is not possible. *See Morley v. Superior Court of Ariz.,* 131 Ariz. 85, 638 P.2d 1331, 1333 (1981) (plaintiff was in a coma and unable to communicate); *Dickson v. Bober,* 269 Minn. 334, 130 N.W.2d 526, 529 (1964) (plaintiff unable to comprehend trial or express himself); *Province v. Center for Women's Health & Family Birth,* 20 Cal.App.4th 1673, 25 Cal.Rptr.2d 667, 675 (1993) (noting infant unable to communicate); *Green v. N. Arundel Hosp. Ass'n Inc.,* 366 Md. 597, 785 A.2d 361, 378 (Ct.App.2001) (plaintiff could not comprehend or participate in the proceeding). Often this result is reached without discussing what, if any, constitutional provision is relevant.

The majority notes Oklahoma has found a right to be present to be grounded in its

constitutional counterpart to the "open courts" provision found in Article I, § 12 of the Indiana Constitution. *Cary v. Oneok, Inc.*, 940 P.2d 201 (Okla.1997). In my view, *Cary* does not support the notion that the right to be present is absolute. Indeed *Cary* itself states that the Oklahoma courts "ha[ve] never held, nor do we hold here that a party's right to be present in the courtroom is absolute." *Id.* at 204. In addition, *Cary* found that the party could assist counsel. *Id.* at 205. Under those circumstances, I agree that the balance of fairness must tip in favor of permitting the party to attend, but I do not believe an "Open Courts" provision is a factor in that result. More generally, the Open Courts provision of the Indiana Constitution assures all litigants an opportunity to be heard but says nothing about the forum and manner in which that proceeding is to go forward. Nothing in the text or purpose supports any particular procedural right. Rather it guarantees a remedy "by due course of law," but leaves it to the "law" to prescribe what course is due. *See McIntosh v. Melroe Co.*, 729 N.E.2d 972 (Ind.2000).

The case law from other jurisdictions finding a right to be present from other sources is equally distinguishable on various grounds. For example, *Carlisle* dealt with whether a party waives its right to be present by choosing competent counsel, and does not deal with whether the party could meaningfully assist counsel. *Fla. Greyhound Lines, Inc. v. Jones*, 60 So.2d 396 (Fla.1952), states that the court will not exclude a plaintiff because of physical appearance, but gives no constitutional basis for its decision. *Rozbicki v. Huybrechts*, 218 Conn. 386, 589 A.2d 363 (1991), concerns whether a person who has the right to be present at trial also has the right to be present during voir dire, and does not reach the question concerning whether the right to be present is abso-

lute. In *Mason v. Moore*, 226 A.D.2d 993, 641 N.Y.S.2d 195 (1996), the party was not excluded because, in part, his presence was necessary to assist experts during their testimony. Moreover, *Fla. Greyhound Lines, Inc., Bryant v. Kan. City Rys. Co.*, 286 Mo. 342, 228 S.W. 472 (1921), and *Chicago Great W. Ry. Co. v. Beecher*, 150 F.2d 394 (8th Cir.1945), all involved the review of the trial court's refusal to exclude the plaintiff. Because the discretion should be given to the trial court, decisions upholding a refusal to exclude do not support an absolute right to be present.

### D. The Right to a Fair Trial

Although found in the text of no particular constitutional provision, fundamental fairness at judicial proceedings is assumed and required by the Indiana Constitution. *Sanchez v. State*, 749 N.E.2d 509, 514–15 (Ind.2001). Similarly, the Due Process Clause of the Fourteenth Amendment applies in state judicial proceedings and carries with it a federal constitutional right to a fair trial in a civil case, albeit no right to a particular result. *See Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 248 (7th Cir.1975); *Bailey v. Systems Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir.1988) ("[F]airness in a jury trial, whether criminal or civil in nature, is a vital constitutional right."); John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 13.8 (6th ed. 2000) (the Constitution guarantees a fair procedure, not a particular result). But this right under either the federal or state constitution does not guarantee the right to be present. Rather, it guarantees fundamental fairness to all parties. A claim of right must be evaluated in terms of its impact on others as well as vindication of the interests of the claimants. When other constitutional concerns, such as due process, cannot be infringed upon

because of the factual circumstances of a particular case, the defendant should have the opportunity to convince the court that his or her right to a fair trial will be in jeopardy unless the plaintiff is barred during the liability phase of a trial. In other words, if a civil trial is bifurcated, and the plaintiff cannot meaningfully aide counsel, this same principle of fairness permits a party the opportunity to show that a fair trial requires the exclusion of an opposing party in the liability phase.

## II. Exclusion in This Case

Here, the trial court made a determination that the presence of the plaintiff would be "highly prejudicial to the Defendants" and that the plaintiff "could not testify about the events related to liability and could not aid in the presentation of Plaintiff[']s case." The child has numerous physical and mental disabilities, including cerebral palsy and Erb's palsy. I do not suggest that these conditions in any way diminish her due process rights. But neither do they overcome the right of an opponent to a fair trial. In the unusual circumstance where a party cannot meaningfully assist counsel and the party's presence may impair a fair trial, a trial court judge should be vested with the discretion to exclude the party. Here, the trial court judge had the opportunity to observe the child in a videotaped deposition and assess her ability to aid counsel and the potential affect of her appearance on a jury. The child also was unable to testify about any matters concerning the liability of the defendants. I do not believe that based on these facts the trial court judge abused his discretion in determining that her appearance, though highly relevant to damages, was not a proper factor in the liability phase.

In short, the trial court found that the defendant's right to a fair trial would be infringed by plaintiff's presence, and that the due process rights of the plaintiff would not be meaningfully impaired by her absence. This finding is highly fact sensitive and should be reviewed under an abuse of discretion standard. *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind.2002) (trial court's application of law to a fact sensitive inquiry is reviewed for an abuse of discretion), *Gage,* 505 N.E.2d at 67 (trial courts have the discretion to exclude plaintiffs).

Just as courts often exclude evidence if its prejudicial effect outweighs its probative value, courts may exclude a party when it can be demonstrated that his or her presence would be prejudicial and the absence of the litigant would not impair other constitutional guarantees because of the party's inability to assist counsel. Even if the presence of a party is significantly prejudicial, other interests—most frequently the right to assist counsel—may nevertheless require the party's presence. But in the absence of a showing of the impairment of those interests, exclusion may be ordered. That is a matter for trial court discretion and I would not find it abused in this case.