## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2017, 5:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dorothy Ferguson
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Franklin Branham, <br> *Appellant,* <br><br> v. <br><br> Dianne Ross Branham, <br> *Appellee.* | October 23, 2017 <br><br> Court of Appeals Case No. <br> 48A05-1702-DR-434 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Angela Warner Sims, Judge <br><br> Trial Court Cause No. <br> 48C01-1501-DR-36 |

**Barnes, Judge.**

## Case Summary

[1] Franklin Branham ("Husband") appeals the dissolution decree entered in his divorce from Dianne Ross Branham ("Wife"). We reverse and remand.

## Issues

The dispositive issue we address is whether the trial court properly denied Husband's motion to continue the final hearing. For purposes of guidance on remand, we also discuss the appropriate means of addressing a spouse's alleged dissipation of marital assets.

## Facts

Husband and Wife were married in 1999. They had no children together. At the beginning of the marriage, Husband was unemployed, but he had previously worked for Chrysler and had a pension of $299 per month. During the marriage, Husband began working at a car dealership and earned more than $100,000 annually in the last few years of the marriage. He also received approximately $30,000 annually in Social Security benefits. Husband had a 401(k) retirement account through the dealership, from which he frequently made substantial withdrawals. In 2013, he withdrew $110,000; in 2014, $50,000; in 2015, $21,400; in 2016, $75,000. Husband also accrued approximately $60,000 in credit card debt. Husband's tax returns also reflect that he earned $55,900 in gambling income in 2014; such income apparently was not received in any other year. During the marriage, Wife began a horse boarding business, from which she earns approximately $10,000 per year. The parties kept their finances separate during the marriage, although Husband paid the mortgage and other household expenses.

[4] Wife filed for divorce on January 21, 2015. In March 2015, the parties agreed to a provisional order that allowed Wife to continue living in the marital residence but required Husband to continue making mortgage, tax, insurance, and utility payments. Husband also was required to pay Wife $500 monthly in maintenance and $750 in attorney fees. The order also continued a previous restraining order prohibiting the parties from "damaging, destroying, concealing, transferring, or encumbering any marital property other than such income as is required to meet the regular conduct of their employment and the necessities of day-to-day life." App. Vol. II p. 200.

[5] A final dissolution hearing originally was scheduled for June 2, 2015. This was continued at Wife's request, and the hearing eventually was rescheduled for December 8, 2015. Meanwhile, on June 30, 2015, Wife filed a petition to hold Husband in contempt for failing to comply with the provisional order with respect to paying the mortgage, maintenance, and attorney fees. The trial court held a contempt hearing on August 13, 2015, and took the matter under advisement. Husband moved to continue the December final hearing date; the trial court granted that motion and gave the parties thirty days to reach an agreement and, if they did not, they were to enter mediation. On December 16, 2015, the trial court denied Wife's contempt petition.

[6] It does not appear the parties actually entered mediation, and another final hearing was scheduled for July 22, 2016. However, on July 13, 2016, Wife filed a second contempt petition. She subsequently moved to continue the final hearing but to have a hearing on the contempt petition. The trial court

continued the final hearing but did hold a contempt hearing on July 22, 2016. The trial court thereafter found Husband in contempt for failing to pay the mortgage and maintenance as required. It also found Husband had improperly cashed out his retirement accounts in order to purchase a residence for himself, in violation of the restraining order. After this hearing, Husband retired from his position at the car dealership and began living solely off his Chrysler pension and Social Security benefits of approximately $2,500 per month.[1]

[7] A final hearing again was scheduled, this time for October 21, 2016. On October 17, 2016, Husband filed a motion to have the parties' real and personal property appraised, as well as a motion to continue the final hearing. The trial court denied the continuance motion.

[8] On the morning of October 21, 2016, Husband's attorney filed an emergency motion to continue. The motion alleged that Husband "has been admitted to Community North Psychiatric Ward for suicidal evaluation" and that "Counsel will submitted [sic] documentation upon receiving this documentation from Community North." *Id.* at 60. Wife and the parties' attorneys appeared at the hearing. Counsel for Husband stated:

> Your Honor, my office was contacted earlier this morning by Mr. Branham's sister indicating that Mr. Branham had been placed on hold at Community North Hospital due to what she believed at the time, suicidal thoughts with an active plan. Um, we then

---

[1] Husband turned seventy-two years old in October 2016.

contacted Community North and obtained documentation that, in fact, he was admitted to the hospital. They didn't necessarily go into depth at that time due to HIPPA [sic] and other requirements saying what he was in there for. His sister then called back after I received the documentation and confirmed that he was in the hospital. It was her understanding he wasn't doing well, and that he was gonna be there for some time. Um, based on that, it would be my position that the matter be continued today. I would certainly be at a disadvantage without Mr. Branham here. . . . If the Court does not feel inclined to continue it, that the Court at least allow us—the matter be bifurcated so that the Petitioner can put on her evidence and I have the opportunity to come back with Mr. Branham and put on his evidence and cross examine at that point in time.

Tr. Vol. I p. 113.

[9] Wife objected to the continuance request. Her counsel did not deny that Husband was hospitalized but claimed he had severely dissipated the marital estate, was behind on his maintenance, had intentionally retired in order to avoid paying maintenance, and had incurred the credit card debt without Wife's knowledge. Counsel further stated, "I'm not aware that Mr. Branham has a history of any type of mental disability. So, it's very coincidental, uh, if that's the—last night is the night that he suddenly became suicidal. I think Mr. Branham's afraid of the consequences of the Court, doesn't wanna be here." *Id.* at 114-15. The trial court denied the continuance request, noting that the matter had been pending for almost two years and that Husband had been found in contempt at the parties' last hearing. The trial court further stated,

the Court is concerned that there's been . . . an attempt to avoid coming to court today, again, either fearful of the consequences or, maybe under the, the stress or weight of what information I know that [counsel for Wife] has indicated that she has . . . uncovered through the discovery process and investigation of this case.

*Id.* at 117. The trial court then received evidence from Wife, which included testimony alleging that Husband had been financially supporting another woman during the marriage, and took the matter under consideration.

[10] On February 1, 2017, the trial court entered its dissolution decree. It found in part:

> The Court finds that Husband has been unable to document what he spent his retirement withdraws [sic] on except for a $40,000 house. The Court concludes that Husband dissipated marital assets which is evidenced by the large retirement withdraws [sic] during the past 3 years, without explanation; gambling winnings in the amount of $55,000 in 2014; overwhelming charges on his credit card statements, and his unwillingness to abide by the property restraining order entered by this Court.

App. Vol. II p. 45. The trial court calculated the total amount of dissipation as $312,300, based on Husband's 401(k) withdrawals in 2013-2016, plus his 2014 gambling winnings. The trial court proceeded to award every item of marital property to Wife, including the marital residence and the residence Husband had subsequently bought for himself, and awarded her the entirety of Husband's Chrysler pension. As for the credit card debt, the court found that Husband should not "be entitled to credit for this debt or that Wife should have

to contribute to the debt." *Id.* at 46. Furthermore, the court found "that in order to create a fair and equitable division of the marital estate Husband owes a judgment to Wife in the sum of $100,000 in addition to the assets that have been ordered set over to her above." *Id.* at 47. The court also ordered Husband to pay $5,000 in attorney fees for Wife, combined with past due maintenance of $21,225. Husband now appeals.

## Analysis

Wife has not filed an appellee's brief. In such a case, we need not undertake the burden of developing an argument on the appellee's behalf. *Riggen v. Riggen*, 71 N.E.3d 420, 422 (Ind. Ct. App. 2017). "Instead, 'we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.'" *Id.* (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). This means error at first sight, on first appearance, or on the face of it. *Id.*

### I. Continuance

Husband contends the trial court erred in denying both his motion to continue for the purpose of appraising property and his emergency motion to continue on the day of the hearing. We need only address the emergency motion. Indiana Trial Rule 53.5 provides in relevant part:

> Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence. The court may award such costs as will reimburse the other parties for their actual expenses incurred from the delay.

We review the denial of a continuance request for an abuse of discretion. *J.P. v. G.M.*, 14 N.E.3d 786, 789 (Ind. Ct. App. 2014). An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances or the reasonable and probable deductions that may be drawn therefrom. *Id.* at 790. "If good cause is shown for granting the motion, denial of a continuance will be deemed to be an abuse of discretion." *Id.*

[13] Generally, "the unavoidable absence of a party is good cause for a continuance." *Breezewood Mgmt. Co. v. Maltbie*, 411 N.E.2d 670, 672 (Ind. Ct. App. 1980). "[A] continuance should not be denied, except for weighty reasons, when the application therefore is proper and shows good cause since, it is an important privilege of a party to be present at his own trial." *Flick v. Simpson*, 145 Ind. App. 698, 705, 252 N.E.2d 508, 512 (1969). "But it is not error to deny a continuance when the party fails to show a sufficient reason for his absence." *Id.* "It cannot be doubted that under proper circumstances, the illness of a party litigant is sufficient grounds for a continuance." *Terry v. Terry*, 160 Ind. App. 653, 666, 313 N.E.2d 83, 91 (1974). We also note, "[c]itation of authority is not required to sustain the proposition that a party to an action is entitled to be personally present in court when a trial is held in which he, or she, is a party of record." *Jordan v. Deery*, 778 N.E.2d 1264, 1272 (Ind. 2002).

"Absent waiver or extreme circumstances, a party may not be excluded." *In re Change of Name of Fetkavich*, 855 N.E.2d 751, 755–56 (Ind. Ct. App. 2006).[2]

[14]     Here, the denial of Husband's continuance request also impacted his right to be present at his final dissolution hearing. Although Husband's counsel did not submit an affidavit in support of the continuance motion, Trial Rule 53.5 does not specify what "other evidence" can be used to support such a motion. There was no dispute that Husband was in fact hospitalized at the time of the hearing due to alleged suicidal ideations, as represented by Husband's counsel on the record. Both Wife's counsel and the trial court speculated that Husband actually was malingering or faking his suicidal intentions, but there was no evidence to support such speculation.[3] Although it was true, as the trial court noted, that this case had been pending for almost two years, it was Wife who had moved to continue two out of three of the previously-scheduled final hearings. There is no indication Husband had ever failed to appear at previous hearings, and so the emergency continuance was not part of a regular pattern by him. As for Husband's previous contempt citation and allegations of dissipation of marital property, they seem to have little bearing on the question of his hospitalization. It may very well be true that the stress of the occasion prompted Husband's hospitalization, but we cannot discern why that would

---

[2] Although *Jordan* specifically addressed the right to be present at a jury trial, we held in *Fetkavich* that the right clearly applied to all types of proceedings. *Fetkavich*, 855 N.E.2d 755 n.4.

[3] If, indeed, it was later discovered that Husband had been malingering, the trial court could have devised a sanction to address that misconduct.

justify denying the continuance request, any more than if Husband had suffered a heart attack. Husband's situation was nothing like, for example, being absent from a hearing because he was attending a convention. *Cf. Loudermilk v. Feld Truck Leasing Co. of America*, 171 Ind. App. 498, 506-07, 358 N.E.2d 160, 165-66 (1976) (noting that continuance based on absence of moving party may be denied if absence was result of party "exercising his free will and discretion in choosing his whereabouts on the trial date"). In sum, and keeping in mind that we are reviewing this issue for prima facie error, we conclude Husband has established that the trial court abused its discretion in denying his emergency motion to continue. We reverse the final dissolution decree and remand for further proceedings consistent with this opinion, including a new final dissolution hearing.

## II. Dissipation of Assets

[15] Although we are remanding for further proceedings, and it is possible Husband could produce evidence at a new hearing to establish that he did not dissipate marital assets, we believe it is necessary to make some observations with respect to dissipation in the event the issue arises again on remand. Here, the trial court's calculation of the marital estate was that it consisted of $108,819 in assets, plus Husband's Chrysler pension of $299 monthly.[4] The court did not indicate a valuation date for the estate. The trial court did not assign any debt

---

[4] The trial court did not assign a present-day total value to the pension.

to the estate, save for the mortgage on the marital residence, although there was evidence of Husband having incurred $60,000 in credit card debt. It also found Husband had dissipated a total of $312,300 in so-called assets, based on 401(k) withdrawals and his 2014 gambling winnings.[5] Of this amount, $96,400 was dissipated in 2015 and 2016, after Wife filed the dissolution petition, and the other $215,900 was dissipated in 2013 and 2014, before she filed it. The trial court awarded 100% of the marital assets it listed to Wife. It also ordered that Husband "owes a judgment to Wife in the sum of $100,000 in addition to the assets that have been ordered set over to her above" based on his dissipation of assets, incurring of debt, and superior earnings. App. Vol. II p. 18.

[16] The trial court's findings and conclusions do not seem to support a judgment against Husband for $100,000. As a general rule, if there is a finding that one spouse dissipated marital assets, such finding may be used by the trial court in determining what is a just and reasonable distribution of the property owned by the parties at the time of dissolution. *In re Marriage of McNanama*, 272 Ind. 483, 487, 399 N.E.2d 371, 373 (1980); *see also* Ind. Code § 31-15-7-5(4). However, this can only affect the marital assets in which a vested present interest exists at the time of dissolution, not the future income of either party. *McNanama*, 272 Ind. at 487, 399 N.E.2d at 373. In other words, a trial court may not award a judgment to one spouse for the other spouse's dissipation that exceeds the total

---

[5] It is not clear that Husband's gambling winnings were an "asset," as opposed to income. *See Kondamuri v. Kondamuri*, 852 N.E.2d 939, 953 (Ind. Ct. App. 2006) (noting that gambling winnings are taxable income).

value of the marital assets. *Id.* A judgment above the value of the martial estate can be entered only if the distinct criteria for awarding maintenance are met. *Id.*; see I.C. § 31-15-7-2. In valuing the marital estate, the trial court may use any date between the date of the filing of the dissolution petition and the date of the final hearing. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A trial court may not directly compensate a party for pre-separation dissipation, but it may do so for post-separation dissipation if dissipation occurred after the date the court utilizes for valuing the marital estate. *In re Marriage of Sloss*, 526 N.E.2d 1036, 1040 (Ind. Ct. App. 1998).

[17] Here, in addition to awarding Wife all of the identified marital assets, using an unspecified valuation date, the trial court also set aside the $60,000 in credit card debt solely to Husband, and furthermore awarded a $100,000 judgment to Wife. It also appears the trial court may have intended to compensate Wife at least partially for dissipation that occurred before the dissolution petition was filed. As currently entered, and without information as to what date the trial court used to value the marital estate, the $100,000 judgment is effectively an award of maintenance to Wife in excess of the marital estate that necessarily would come out of Husband's future income. This was improper. On remand, should there be another finding of dissipation, the trial court must confine itself to the legal parameters outlined in this opinion when addressing that dissipation.

# Conclusion

Husband has established prima facie error in the trial court's denial of his emergency continuance motion. We reverse the final dissolution decree and remand for the trial court to conduct a new hearing and enter a new dissolution decree in accordance with this opinion.

Reversed and remanded.

May, J., and Bradford, J., concur.